1

UNITED STATES DISTRICT COURT

2

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

AUG – 1 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA ex rel.
[UNDER SEAL],

   Plaintiffs,

  v.

[UNDER SEAL],

   Defendants.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C.
§ 3730(b)(2)**

2:16 – CV – 1 8 0 5 MCE EFB

# SEALED

Complaint filed under seal

1  Michael A Hirst, Esq. CA Bar #131034
   michael.hirst@hirstlawgroup.com
2  HIRST LAW GROUP, P.C.
   200 B Street, Suite A
3  Davis, CA 95616
   Tel: (530) 756-7700
4  Fax: (530) 756-7707

5  Counsel for Plaintiff-Relator
   Toni S. Lee
6

**FILED**

AUG - 1 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

**SEALED**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

2: 16 - CV - 1 8 0 5 MCE EFB

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. TONI S. LEE, | |
| Plaintiffs, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| BARCO UNIFORMS, INC.; ABLE ALLIED LIMITED; NATHAN GLOBAL DIRECT, INC.; J & K GARMENT, INC., and DOES 1 through 10, | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| Defendants. | |

Plaintiff Toni S. Lee, through her counsel Hirst Law Group, P.C., on behalf of the United

States of America, alleges as follows:

**I.     NATURE OF THIS ACTION**

1. This action alleges that, since at least 2010 and continuing to the present, Defendants

Barco Uniforms, Inc., ("Barco"), Able Allied Limited ("Able"), Nathan Global Direct, Inc.

("Nathan"), and J & K Garment, Inc. ("J & K") have knowingly defrauded the United States by

making, causing to be made, and/or conspiring to make, false statements on customs entry

documents, including Customs and Border Protection ("CBP") Form 7501 and its accompanying

invoices and other documents, to avoid or decrease its payment obligations for customs duties.

Defendants, acting in concert and for their mutual benefit, schemed to falsely report information

used in determining the correct and applicable customs duties, so that lower customs duties

would be paid.  Upon information and belief, Defendants have also conspired with other Doe Defendants to perpetrate the same fraud discussed herein.

2. Defendants have knowingly made false statements, caused false statements to be made, and/or conspired to make false statements in order to avoid or decrease an obligation to pay or transmit money or property to the federal Government.

3. Defendants' conduct violates the federal False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA").  As a result of their actions, Defendants have caused the United States to sustain a direct loss of funds and damage to its interests.

4. The FCA was originally enacted at the request of President Lincoln during the Civil War, when the president believed that the Union Army was being defrauded by contractors.  The Act was substantially amended by Congress in 1986 and 2009 to enhance the Government's ability to recover losses sustained as a result of fraud.  At those times, Congress determined that fraud against the Government was pervasive and that the FCA, which Congress described as the primary tool for combating Government fraud, was in need of reform.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecute fraud on the Government's behalf.

5. A Defendant is liable under the FCA if it knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. *31 U.S.C. § 3729(a)(1)(A)*.  A Defendant is also liable under the FCA if it knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. *31 U.S.C. § 3729(a)(1)(B)*.  Further, a Defendant is liable under the FCA if it knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. *31 U.S.C. § 3729(a)(1)(G)*.  Additionally, the FCA prohibits defendants from conspiring with one another to violate the sections identified above. *31 U.S.C. § 3729(a)(1)(C)*.  Any person who violates the FCA is liable

Complaint filed under seal                    2

for a civil penalty of between $5,500 to $11,000 for each violation, plus three times the loss sustained by the United States. *31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9).* Penalty amounts are increased to between $10,781 and $21,563 for each violation occurring after November 2, 2015, and accessed on or after August 1, 2016. *Civil Monetary Penalties Inflation Adjustment*, 81 Fed. Reg. 42,491, 42,494 (June 30, 2016).

6. The FCA defines "knowingly" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard of, the truth or falsity of the information. *31 U.S.C. § 3729(b)(1).*

7. Based on the FCA, qui tam plaintiff Toni S. Lee ( "Lee," "Relator," or "Plaintiff") seeks to recover all available damages, civil penalties, and other relief for the violations alleged herein, in every jurisdiction to which the Defendants' misconduct has extended.

8. All of the Defendants who engaged in the fraudulent conduct are not presently known by Relator, and the precise amount of the loss to the federal Government cannot presently be determined. Further information on the details and extent of the fraud are contained within Defendants' records.

## II.    PARTIES

9. Relator Toni S. Lee is a United States citizen who resides in California and has direct and personal knowledge of the matters alleged herein. She was employed by Barco from March 28, 2011, to March 2, 2015, when she was terminated after complaining to management about the conduct discussed, below. Her job title was Director of Product Commercialization.

10. Barco Uniforms, Inc., is a privately held corporation established in Delaware and registered to do business in California as well as other states. Its principal office is located at 350 West Rosecrans Avenue, Gardena, California, 90248. According to its website, Barco sells uniforms to retailers located in California, including Sacramento, California, and throughout the United States.

11. Defendant Able Allied Limited is a company located at 2107-D West Commonwealth Avenue, #433, Alhambra, California. The California Secretary of State does not have a listing for Able Allied Limited.

Complaint filed under seal                    3

12. Defendant Nathan Global Direct, Inc., is a corporation established in California that is listed as suspended on the California Secretary of State's website. Its address is listed as 1441 Huntington Drive, Suite 108, South Pasadena, California, 91030.

13. Defendant J & K Garment, Inc., is a corporation established in California that is listed as suspended on the California Secretary of State's website. Its address is listed as 2457 3/4 Chico Avenue, South El Monte, California, 91733.

14. The identities of the remaining Doe Defendants are presently unknown to Relator. All listed Defendants and such additional Doe Defendants served as contractors, agents, partners, and/or representatives of one and another in the fraud, concealment, and avoidance of payments, and were acting within the course, scope, and authority of such contract, agency, partnership, and/or representation for the conduct described herein.

## III.   JURISDICTION AND VENUE

15. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

16. Under 31 U.S.C. § 3730(e), there has been no public disclosure of the allegations or transactions in this Complaint. To the extent there has been any such public disclosure, Relator Lee constitutes an "original source" pursuant to 31 U.S.C. § 3730(e)(4). Prior to any public disclosure, Lee voluntarily disclosed to the Government the information on which the allegations or transactions discussed herein are based; she has knowledge independent of, and that materially adds to, any publicly disclosed allegations or transactions; and this information was provided to the Government before this action was filed.

17. Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and 31 U.S.C. § 3732(a), as one or more of the Defendants or their agents can be found, reside, transact business, or otherwise engaged in fraudulent conduct within the district.

## IV.   BACKGROUND

### A. Defendant Barco

1        18.  According to its web site, www.barcouniforms.com, Defendant Barco is the sole

2   uniform provider for Jack-in-the-Box, Kentucky Fried Chicken, Wendy's, Regal Entertainment

3   Group, Qdoba, and Jamba Juice, among other companies.  It is one of three uniform providers for

4   McDonald's.  It also sells uniforms to the public, such as a brand of medical uniforms called

5   "Grey's Anatomy Scrubs," whose licensor is Disney.

6        **B. Defendant Able**

7        19.  According to its web site, www.ableallied.com, Defendant Able is an apparel

8   manufacturer with a factory, Huaian Y & D Garment Co., Ltd., located in Huaian City, China.

9   Upon information and belief, Kenny Chan is the owner, and David Chan is the company's

10  president.  The company's office in Alhambra, California, is believed to serve as the contact

11  point for business with Barco and possibly other companies.

12       **C. Defendant Nathan**

13       20.  Defendant Nathan is an apparel manufacturer and distributor.  Upon information

14  and belief, Kenny Chan is the owner, and David Chan is the company's president.  The

15  company's office in South Pasadena, California, is believed to serve as the contact point for

16  business with Barco and possibly other companies.  According to the Relator, Nathan also

17  has or had a factory in China.

18       **D. Defendant J & K**

19       21.  Defendant J & K is an apparel manufacturer and distributer.  J & K is believed to

20  have a factory, Suzhou J & K Garment Co. Ltd., in China.  Upon information and belief,

21  Kenny Chan is the owner, and David Chan is the company's Chief Financial Officer and

22  Chief Operating Officer.  The company's office in South El Monte, California, is believed

23  to serve as the contact point for business with Barco and possibly other companies.

24       **E.  Customs Duties in the United States**

25       22.  The United States imposes tariffs (customs duties) on imports of goods. The duty is

26  levied at the time of import and is paid by the importer of record, which may be the owner of the

27  goods, the purchaser, or a licensed customs broker.  *19 C.F.R. § 101.1.*  Customs duties vary by

28  country of origin and product.  The importer of record declares the transaction value of the goods

1  and country of origin, along with other information.  The "importer" means "the person primarily

2  liable for the payment of any duties on the merchandise." *19 C.F.R. § 101.1*.  The declarations

3  must include an invoice and packing list (or equivalent) identifying all goods.  The CBP then

4  assesses the duty, which must be paid by the importer of record before goods can be released.

5      23.  Title VI of the North American Free Trade Agreement Implementation Act, 19

6  U.S.C. §§ 3301, et seq., commonly known as the Customs Modernization or "Mod" Act, became

7  effective in 1993 and established that the importer of record is responsible for using reasonable

8  care to enter, classify, determine the value of imported merchandise, and provide any other

9  information necessary to enable CBP to properly assess duties, collect accurate statistics, and

10  determine whether other applicable legal requirements, if any, have been met.  CBP is then

11  responsible for fixing the final classification and value of the merchandise.  *"Customs Value: An*

12  *Informed Compliance Publication," United States Department of Homeland Security, U.S.*

13  *Customs and Border Protection, Revised July 2006, at 3.*

14      24.  Rates of tax on transaction values vary by country of origin.  Customs duty rates may

15  be expressed as a percentage of value, or in dollars and cents per unit.  *19 C.F.R. § 141.69*.  All

16  goods that are not exempt are subject to duty computed according to the Harmonized Tariff

17  Schedule of the United States ("HTS").  *19 C.F.R. § 152.11*.  This schedule provides the

18  applicable tariff rates and statistical categories for all merchandise imported into the United

19  States.

20      25.  Entry summary documentation is filed and estimated duties are required to be

21  deposited within 10 working days of the entry of merchandise at a designated customhouse.

22  Entry summary documentation consists of:  (1) Entry Summary Form (CBP Form 7501) and (2)

23  other invoices and documents necessary to assess duties, collect statistics, or determine that all

24  import requirements have been satisfied.  This paper documentation can be reduced or eliminated

25  by using features of the Automated Broker Interface.  *"Importing into the United States, A Guide*

26  *for Commercial Importers," United States Department of Homeland Security, U.S. Customs and*

27  *Border Protection, Publication No. 0000-0504, Revised November 2006, at 13.*

28      26.  Imported goods are generally accompanied by a bill of lading or air waybill

Complaint filed under seal                          6

describing the goods. *19 C.F.R. § 141.11(a)(1).* For purposes of customs duty assessment, the goods must also be accompanied by an invoice documenting the transaction value, or the price actually paid by the purchaser. *19 C.F.R. §§ 141.81, 152.103(a)(1).* The goods on the bill of lading and invoice are classified and duty is computed by the importer or CBP. *19 C.F.R. § 141.90(b).*

27. The invoice must set forth, among other things:

(3) A detailed description of the merchandise, including the name by which each item is known, the grade or quality, and the marks, numbers, and symbols under which sold by the seller or manufacturer to the trade in the country of exportation, together with the marks and numbers of the packages in which the merchandise is packed;

(4) The quantities in the weights and measures of the country or place from which the merchandise is shipped, or in the weights and measures of the United States;

(5) The purchase price of each item in the currency of the purchase, if the merchandise is shipped in pursuance of a purchase or an agreement to purchase.

*19 C.F.R. § 141.86(a)(3)(4),(5).*

28. In addition, the invoice shall contain:

(8) All charges upon the merchandise itemized by name and amount, including freight, insurance, commission, cases, containers, coverings, and cost of packing; and if not included above, all charges, costs, and expenses incurred in bringing the merchandise from alongside the carrier at the port of exportation in the country of exportation and placing it alongside the carrier at the first United States port of entry.

*19 C.F.R. § 141.86(a)(8).*

29. After duties have been paid, CBP approves the goods for import. They can then be removed from the port of entry, bonded warehouse, or Free-Trade Zone.

**F. Importer's Certification**

30. The following declaration is signed by the importer of record:

I declare that I am the □ importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, OR □ owner or purchaser or agent thereof. I further declare that the merchandise □ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true, OR □ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the

1    appropriate CBP officer any information showing a different statement of facts.

2    *CBP Form 7501 (06/09).*

3    **G. International Commercial Terms Rules**

4    31. When global companies enter into contracts to buy and sell goods, they negotiate

5    terms including the price, quantity, and characteristics of the goods. Every international contract

6    also contains what is referred to as "Incoterms" rules, or International Commercial Terms rules.

7    These rules are an internationally recognized standard and are used worldwide in international

8    and domestic contracts for the sale of goods. First published in 1936, Incoterms rules provide

9    internationally accepted definitions and rules of interpretation for most common commercial

10   terms. *See International Chamber of Commerce at www.iccwbo.org/products-and-*

11   *services/trade-facilitation/incoterms-2010.*

12   32. The incorporation of Incoterms in international sales contracts reduce the risks of

13   misunderstandings and disputes between customers and suppliers. The parties select the terms to

14   use. These rules determine, for example, who pays the cost of each transportation segment, who

15   is responsible for loading and unloading of goods, and who bears the risk of loss at any point

16   during an international shipment. Incoterms also influence customs valuation basis of imported

17   merchandise. Two Incoterms rules are of relevance here: Delivered Duty Paid ("DDP") and

18   Free On Board ("FOB"). *See www.inboundlogistics.com /cms/article/understanding-incoterms/.*

19   33. The Incoterms rules define "Delivered Duty Paid" to mean:

20       that the seller delivers the goods when the goods are placed at the disposal of the
         buyer, cleared for import on the arriving means of transport ready for unloading at
21       the named place of destination. The seller bears all the costs and risks involved in
         bringing the goods to the place of destination and has an obligation to clear the
22       goods not only for export but also for import, to pay any duty for both export and
         import and to carry out all customs formalities.
23   *www.iccwbo.org/products-and-services/trade-facilitation/incoterms-2010/the-incoterms-rules.*

24   34. Thus, under the DDP definition, the seller must obtain at his own risk and expense

25   any export and import license and other official authorization or documents. The seller must also

26   carry out, where applicable, all customs formalities necessary for the export of the goods, for

27   their transit through any country, and for their import. In addition, the seller must pay the costs

28   of transportation, insurance, and all duties, taxes, and other charges. The seller must provide the

buyer, at the seller's expense, a delivery order (for example, a negotiable bill of lading) that the buyer may require to take delivery of the goods. Thus, DDP puts the full burden of transporting goods on the seller, for which the buyer bears no responsibilities. This makes DDP the riskiest and most expensive option for sellers. *See "DDP Incoterms 2010: International Chamber of Commerce Official Rules for the Interpretations of Trade Terms," published by the International Chamber of Commerce. See, http://www.iccwbo.org/products-and-services/trade-facilitation/incoterms-2010/the-incoterms-rules/.*

35. The Incoterms rules define "Free On Board" to mean:

> that the seller delivers the goods on board the vessel nominated by the buyer at the named port of shipment or procures the goods already so delivered. The risk of loss of or damage to the goods passes when the goods are on board the vessel, and the buyer bears all costs from that moment onwards.

*Id.*

36. Thus, FOB, in contrast to DDP, means that the buyer must obtain at his own risk and expense any import license or other official authorization. The buyer must carry out, where applicable, all customs formalities for the import of the goods. In addition, the buyer must pay all duties, taxes, and other charges upon import of the goods and for their transit through any country. *See "FOB Incoterms 2010: International Chamber of Commerce Official Rules for the Interpretations of Trade Terms," See  http://www.iccwbo.org/products-and-services/trade-facilitation/incoterms-2010/.*

37. Defendant Barco has been involved in the importation of goods and customs reporting for twenty (20) years. Defendants J & K, Nathan, and Able have been involved in the importation of goods and customs reporting since at least 2005. As such, Defendants are very familiar with customs reporting requirements, determination of duties owed, and payment requirements.

**V.     ALLEGATIONS**

38. Relator incorporates by reference and realleges as though fully set forth herein all preceding paragraphs.

**A. False Statements on Customs Forms**

39. Defendants Barco, Able, Nathan, and J & K have knowingly defrauded the United

1  States by making, causing to be made, and/or conspiring to make false statements on entry
2  summary documentation, including CBP Form 7501 and its accompanying invoices and other
3  documents, to avoid or decrease payment obligations for customs duties. The Defendants, acting
4  in concert and for their mutual benefit, orchestrated and initiated a scheme to inaccurately and
5  falsely identify information necessary to properly determine the applicable customs duties.
6  Through their conduct, Defendants have caused a loss to the Government and have received
7  substantial financial rewards to which they are not entitled.

8      40. Over several years, Defendants Able, Nathan, and J & K have agreed with Defendant
9  Barco to use the DDP method so that Able, Nathan, and J & K would be responsible for
10 reporting and paying the duties owed for merchandise imported from China to Barco. As part of
11 doing so, Defendants Able, Nathan, and J & K have conspired with Defendant Barco to make
12 false statements to CBP during the importation process in order to pay lower customs duties than
13 required. Able's, Nathan's, and J & K's false statements are made so that the Defendants pay
14 less in customs duties than the Government is owed, and because this lowers the overall costs of
15 the merchandise, Barco is similarly able to pay less for the merchandise than it would otherwise
16 be required to pay. As such, Barco knowingly encourages and furthers the conspiracy to under-
17 report customs duties and negotiates better prices for itself as part of the conspiracy.

18     41. Numerous communications between and among the Defendants provide evidence of
19 the conspiracy for their mutual benefit. Several examples of understated customs duty rates are
20 set forth herein. For example, on March 25, 2013, Barco sought prices from David Chan,
21 President of Nathan/Able/J & K, on four different types of Kentucky Fried Chicken garments.
22 On April 1, 2013, Chan provided Relator Lee with a spreadsheet showing both total DDP prices
23 per garment (with duties paid by Nathan/Able/J & K) and FOB prices (with duties paid by Barco)
24 for the four types of garments. Because Nathan/Able/J & K never intended to pay the correct
25 duties owed, the DDP prices were substantially lower than the FOB prices after adding any duty
26 and freight costs that would be paid by Barco under FOB. For instance, the DDP price per
27 garment (which includes duty and freight to the U.S.) for Style KF2055 - 100% poly fleece,
28 regular size was listed as $9.20, and the FOB price (without duty and freight costs) was listed as

Complaint filed under seal                    10

$8.39.

42. DDP prices per garment should be almost identical to FOB prices per garment after adding duty and freight costs to the FOB prices. For these garments, the appropriate duty rate was 32%. Thus, under FOB, there would be an additional duty cost component of about $2.68 per garment and a freight cost component of about $0.15, resulting in what would be a total cost to Barco of $11.22 per garment. However, David Chan's DDP price of $9.20 was $2.02 less than his FOB price after adding in duty and freight costs per garment ($11.22). In essence, Chan was saying that he would provide Barco with lower costs for the garments if DDP was used rather than FOB because he, as the importer under DDP, would fraudulently pay less in customs duties than was owed. As such, by agreeing to the scheme in which lower customs duties were paid, Barco could benefit through its own costs savings.

43. Evidence demonstrates Barco's knowledge and acceptance of Able's intent to understate the duty payable upon the importation of garments. In an email from Danny Kwan ("Kwan"), Able's Vice President of Sales, to Lee on November 3, 2014, with cc's: to Alicia Colon, Barco's Product Development Manager; Samuel Lee, formerly Barco's Executive Director of Manufacturing; Kenny Chan, owner of Able, Nathan, and J & K; David Chan, President of Able, Nathan, and J & K; and Candy Hu, Production Coordinator of Able, Nathan, and J & K, Kwan identifies the correct duty rate of 32.5% applied to costs of $1.11, rendering $0.36 in duty per garment for extra fabric of a certain McDonald's uniform. Despite identifying the correct duty rate, Kwan then states that he will only apply duty costs of $0.21 per garment (which calculates to a rate of 19%):

Hi Toni,

> You forgot to calculate the duty for the extra fabric cost being added which is $1.11 x 32.5% = $0.36. You can see from the cost breakdown sheet we only added $0.21. **We can't declare the value too low or will get into trouble. Hope it is clear to you now**.

> Best Regards,

> Danny *(emphasis added)*

44. On or about December 26, 2014, during negotiations to secure the production of a Wendy's uniform type, Style WN 302B (Male Crew - Regular Size), Able/Nathan provided

1   Barco a quote of $3.58 in total vendor costs plus a duty cost component of only $0.64, or 18%,

2   per garment. The applicable duty rate for this garment is 32% based on HTS 6109.90.10. Sae-A

3   Trading Co., Limited, another apparel manufacturer, had also provided Barco a FOB bid for this

4   same garment. Its bid was $3.54 per garment in total vendor costs plus appropriate duty costs at

5   32% for an additional $1.13 per garment. Thus, as Barco knew, Able/Nathan's price for the duty

6   component was understated by $0.49 per garment, or only about 60% of the appropriate rate.

7        45.  On April 4, 2011, when Barco was finalizing its 4-year agreement with Wendy's,

8   Andrew Akiyoshi, Barco's Senior Vice President - Supply Chain and Operations, emailed David

9   Chan, President of Able, Nathan, and J & K, and Kenny Chan, owner of Able, Nathan, and J &

10  K, and requested cost breakdowns for several different types of Wendy's knit and woven

11  garments. That same day, David Chan replied with "my rough estimate of the overall cost per

12  garment.

13  •      Fabric & trim 50%

14  •      Mft [manufacturer's] cost & overhead 40%

15  •      Freight/duty 10%."

16       46.  Based on years of importing garments, each of the Defendants knew that a 10%

17  freight duty for this merchandise meant that Defendants would underpay the duties owed.

18  Indeed, two days later, David Chan sent a spreadsheet to Barco containing the cost breakdowns

19  for nine different types of Wendy's garments. The cost components were: fabric, trim, labor,

20  overhead, profit, duty, and shipping.[1] Each garment type had a different price for the duty cost

21  component ranging from $0.25 to $0.96 per garment. Based upon the total costs for each

22  garment, the duty amounts listed in the spreadsheet represented the following duty rates: one

23  garment at 8.7%, seven garments ranging from 12.1% to 14.4%, and one garment at 16.0%.

24  However, the appropriate duty rates for these nine garments were between 16% and 32%,

25  depending on the garment.

26       47.  On or about September 22, 2014, Able provided Barco quotes for 10 different types

27  of McDonald's garments with low duty cost components. For example, Able gave a quote of

28

[1]  The duty rate is applied to the value of the merchandise purchased, i.e., without including overseas shipping. *"Proper Deductions of Freight and Other Costs from Customs Value," U.S. Customs Service, March 2000 at 8.*

1  $7.05 in total DDP costs to Barco for a McDonald's male shirt, MC 487, which included a duty
2  cost component of only $0.85 per garment, a rate of 14.1%.   The appropriate duty rate for this
3  garment was 32% based on HTS 6109.90.10 (T-shirts and similar garments of other textile
4  materials of man-made fibers). A 32% rate would result in a duty of $1.93 per garment. Thus,
5  Able's quote for duty was less than half of the appropriate rate and was beneficial to Barco in
6  that it reduced the amount Barco was required to pay Able for the product.

7      48. On December 10, 2014, Danny Kwan emailed Lee regarding revised cost
8  breakdowns for two different types of Arby's garments, Style AR 1A & 1B (regular size) and
9  Style AR 1A & 1B/X (extra large size). Able's total vendor costs for these two garments were
10  $3.12 and $4.03, respectively. The duty cost component for each garment was listed as $0.26.
11  As such, $0.26 represents duty rates of 8.3% and 6.5% respectively. The appropriate duty rate
12  for these garments was 16.5% based on HTS 6109.10.00 for cotton rich fabric tee shirts.

13      49. On January 23, 2015, Kwan, Able's Vice President of Sales, emailed Lee cost
14  breakdowns for two proposed garment types for Panda Express, PE1006B Male Polo and
15  PE1007B Female Polo. The Male Polo duty cost component was shown as $0.83 per garment on
16  total vendor costs of $4.27, and the Female Polo duty cost component was shown as $0.72 per
17  garment on total vendor costs of $3.72. These duty amounts represent a 19.4% duty rate.
18  However, the appropriate duty rate for these garments was 32% based on HTS 6109.90.10.

19      50. On February 3, 2015, Kwan emailed Lee with cost breakdown figures for eight
20  different types of male polo shirts for Regal Cinema. Although the total cost for each garment
21  was different, the duty cost component for each garment was listed at $0.65. This $0.65 amount
22  computes to duty rates ranging from 14% to 18% on the per garment prices. However, the
23  appropriate duty rate for these garments was 32% based on HTS 6109.90.10.

24      **B. Additional Evidence of Defendants' Knowledge of the Fraud**

25      51. Relator Lee was terminated by Barco on March 2, 2015. She had complained about
26  Defendants undervaluing the cost component of duty on several occasions. She first brought up
27  the issue in June 2014 with Samuel Lee, her supervisor at the time, and with Edwin Marroquin
28  ("Marroquin"), Barco's now former Executive Director of Quality Assurance & Compliance, in

Complaint filed under seal                13

1    attendance.  Samuel Lee's response was: "That's why they changed the company name from

2    Nathan Global Direct to Able Allied" and then he walked away with a smile on his face.  No

3    change was made in the duty reporting.  Relator Lee interpreted Samuel Lee's comment as

4    Barco's encouragement of Able to cheat and willingness to continue to benefit from the conduct.

5    Relator Lee subsequently complained in October or November 2014 to David Aquino

6    ("Aquino"), Barco's Senior Vice President of Supply Chain, Operations & IT.  Aquino replied in

7    an irritated tone of voice: "It is Able Allied's fault, not Barco's."   At that time, both Samuel Lee

8    and Marroquin were present.

9         52.   In the summer or fall of 2014, Marroquin forwarded an email he had received from

10   Norman Krieger ("Krieger"), Krieger Worldwide, Barco's freight forwarder, to Relator Lee and

11   Samuel Lee.  The email provided Krieger's opinion that Barco would also be financially liable

12   for any supplier's cheating on duty when it knew that the cheating was taking place.

13        53.   In December 2014, Relator Lee again voiced her concerns about the fraud to Kwan,

14   Able's Vice President of Sales, in the presence of Samuel Lee, Marroquin, and Alicia Colon.

15   Relator Lee had requested the meeting with Kwan to discuss Able's price competitiveness with

16   other suppliers.  Relator Lee told Kwan that the only reason Able could provide lower prices was

17   due to it undervaluing the duty.  Neither Kwan nor the others present refuted Lee's remark.

18        54.   Defendants' conspiracy to knowingly submit false statements on entry summary

19   documentation and knowingly under-report duties owed for garment importation into the United

20   States are violations of the FCA and have resulted in substantial losses to the Government.

21                                       **Count I**

22                                **False Claims Act**
                                **31 U.S.C. § 3729(a)(1)(A)**
23

24        55.   Relator incorporates by reference and realleges as though fully set forth herein all

25   preceding paragraphs.

26        56.   This is a claim for treble damages and penalties under the False Claims Act,

27   31 U.S.C. §§ 3729, et seq., as amended.

28        57.   Through the acts described above, Defendants have knowingly presented or caused to

1    be presented, false or fraudulent claims for payment or approval, within the meaning of 31

2    U.S.C. § 3729(a)(1)(A).

3        58. The United States, unaware of the falsity of the records, statements and claims made

4    or caused to be made by Defendants, paid and continues to pay claims that would

5    not be paid but for Defendants' unlawful conduct.

6        59. As a result of the Defendants' acts, the United States has been damaged, and

7    continues to be damaged, in a substantial amount to be determined at trial.

8        60. Additionally, the United States is currently entitled to the maximum penalty of

9    $11,000 for each and every violation of 31 U.S.C. § 3729(a)(1)(A) as described herein,

10   and a maximum penalty of $21,563 for each and every violation occurring after  November 2,

11   2015 and assessed after August 1, 2016.

12                                    **Count II**

13                                **False Claims Act**
                                **31 U.S.C. § 3729(a)(1)(B)**
14
15       61. Relator incorporates by reference and realleges as though fully set forth herein all

16   preceding paragraphs.

17       62. This is a claim for treble damages and penalties under the False Claims Act, 31

18   U.S.C. §§ 3729, et seq., as amended.

19       63. Through the acts described above, Defendants have knowingly made, used, or caused

20   to be made or used, false records or statements material to false or fraudulent claims, within the

21   meaning of 31 U.S.C. § 3729(a)(1)(B).

22       64. The United States, unaware of the falsity of the records and statements made or

23   caused to be made by Defendants, has been damaged, and continues to be damaged, in a

24   substantial amount to be determined at trial.

25       65. Additionally, the United States is currently entitled to the maximum penalty of

26   $11,000 for each and every violation of 31 U.S.C. § 3729(a)(1)(B) as described herein, and a

27   maximum penalty of $21,563 for each and every violation occurring after November 2, 2015 and

28   assessed after August 1, 2016.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Count III

### False Claims Act
### 31 U.S.C. § 3729(a)(1)(C)

66. Relator incorporates by reference and realleges as though fully set forth herein all preceding paragraphs.

67. This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

68. Through the acts described above, Defendants and Doe Defendants, acting together in concert, conspired to defraud the United States within the meaning of 31 U.S.C. § 3729(a)(1)(C).

69. As a result of the Defendants' acts, the United States, unaware of the fraudulent conduct of Defendants, has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

70. Additionally, the United States is currently entitled to the maximum penalty of $11,000 for each and every violation of 31 U.S.C. § 3729(a)(1)(C) as described herein, and a maximum penalty of $21,563 for each and every violation occurring after November 2, 2015 and assessed after August 1, 2016.

### Count IV

### False Claims Act
### 31 U.S.C. § 3729(a)(1)(G)

71. Relator incorporates by reference and realleges as though fully set forth herein all preceding paragraphs.

72. This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

73. Through the acts described above, Defendants knowingly made or used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed, or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States within the meaning of 31 U.S.C. § 3729(a)(1)(G).

Complaint filed under seal                    16

74.  As a result, monies were lost to the United States through the non-payment or non-transmittal of money or property owed to the United States by the Defendants, and the United States sustained costs and damages.

75.  By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

76.  Additionally, the United States is currently entitled to the maximum penalty of $11,000 for each and every violation of 31 U.S.C. § 3729(a)(1)(G) as described herein, and a maximum penalty of $21,563 for each and every violation occurring after November 2, 2015 and assessed after August 1, 2016.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against the Defendants as follows:

1.      That Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729 et seq.;

2.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

3.      That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

4.      That Relator be awarded all costs of this action, including attorneys' fees, costs and expenses; and

5.      That Relator recover such other and further relief as the Court deems just and proper.

///

///

///

///

///

///

1

**DEMAND FOR JURY TRIAL**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

3  demands a trial by jury.

4  Dated: 8/1/16                    By: _____

5                                       Michael A. Hirst, Esq.
                                        CA Bar No. 131034
6                                       HIRST LAW GROUP, P.C.
                                        200 B. Street, Suite A
7                                       Davis, CA 95616
                                        Telephone: 530-756-7700
8                                       Facsimile: 530-756-7707
                                        michael.hirst@hirstlawgroup.com
9
                                        Attorneys for Qui Tam
10                                      Plaintiff/Relator Toni S. Lee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint filed under seal                    18

# PROOF OF SERVICE

I am employed by Hirst Law Group, P.C., in the County of Yolo, State of California. I am a citizen of the United States, over the age of eighteen (18) years, and not a party to the within action. My business address is 200 B Street, Suite A, Davis, California, 95616.

On August 1, 2016, I served the following document(s), described as:

**Complaint and Demand for Jury Trial**
**Statement of Material Evidence and Information**
**Civil Cover Sheet**
**Request to File Under Seal**
**Proposed Order to File Under Seal**

as follows:

Honorable Loretta E. Lynch
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Honorable Phillip A. Talbert
Acting United States Attorney
Eastern District of California
501 I Street
Suite 10-100
Sacramento, California 95814


XX          (BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED)

I placed a true and correct copy of the foregoing document(s) in a sealed envelope addressed to each interested party as set forth above. I placed each such envelope, with postage thereon fully prepaid, certified mail, and return receipt requested, for collection and mailing in one of the United States Post Office Boxes located in Davis, California.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I executed this document on August 1, 2016.

Natalie Emken