SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DAVID L. DOUGLASS (admitted *pro hac vice*)
ddouglass@sheppard.com
DAVID T. FISCHER (admitted *pro hac vice*)
dfischer@sheppard.com
NIKOLE SNYDER (admitted *pro hac vice*)
nsnyder@sheppard.com
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Telephone:     202.747.1904
Facsimile:     202.747.3914

MELISSA K. EAVES, Cal Bar No. 123021
meaves@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:     213.620.1780
Facsimile:     213.620.1398

Attorneys for Defendant Barco Uniforms, Inc.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TONI S. LEE, <br><br> Plaintiffs, <br><br> v. <br><br> BARCO UNIFORMS, INC., KENNY CHAN; DAVID CHAN; ABLE ALLIED LIMITED; NATHAN GLOBAL DIRECT INC.; J&K GARMENT, INC.; MEGA GOODWILL LTD; JS GARMENT CO.; and SUPERWAY IMPORT & EXPORT, INC., <br><br> Defendants. | Case No. 2:16-CV-1805-DC-JDP <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCO UNIFORM INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> *Filed concurrently with Motion and Notice of Motion* <br><br> **Date: 05/01/2026** <br> **Time: 1:30 p.m.** <br> **Courtroom: 10** <br> **Judge: Hon. Dena Coggins** |

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ...................................................................................................10

PROCEDURAL BACKGROUND .............................................................................................10

    I.      Procedural History............................................................................................10

LEGAL STANDARD ...............................................................................................................12

ARGUMENT .............................................................................................................................13

    I.      This Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction ..........13

        A.      At A Minimum, The United States Commenced Three New Counts All of Which Must be Dismissed ..................................................................17

    II.      The Complaint Fails to Allege Sufficient Facts Under Cognizable Legal Theories ...........................................................................................................18

        A.      Summary of the Argument.......................................................................18

        B.      Background and Regulatory Framework ......................................................20

            1.      Importation is Governed by A Robust and Complex Regulatory Framework and Settled Commercial Practices..............20

            2.      Calculating Valuation For Duty Purposes......................................21

        C.      The Complaint Fails to Allege Sufficient Facts As Measured by FRCP Rules 8(a) and 9(b) to Establish Cognizable FCA Claims ...............22

        D.      Under Any Pleading Standard, The Complaint Fails to Adequately Plead a Conspiracy .......................................................................................24

        E.      The Complaint Fails To Exclude Equally Plausible Lawful Explanations for the Conduct Alleged. .......................................................25

            1.      The Complaint Also Fails To Exclude Lawful Methods To Alter Duty Cost ................................................................................27

        F.      The Complaint Fails To Plead With Specificity Facts To Support the FCA's Elements ......................................................................................30

            1.      The Conclusory Allegations Relating to Valuation Are Insufficient To Establish Falsity .....................................................31

            2.      The Complaint Fails to Plead Facts Establishing Barco's Scienter..................................................................................31

            3.      The Complaint Fails to Plead a Factual Basis for Finding Barco's Cost Sheets to be Material to its Obligation to Pay Money to the Government..................................................................32

4.    The Complaint Fails to Establish a Causal Connection Between Barco's Cost Sheets And The Allegedly False Claims................................................................................33

5.    The Complaint Fails To Identify Any "Obligation" Owed By Barco .................................................................................38

III.    The Unjust Enrichment Claim Fails Under Rule 12(b)(6) .....................................39

IV.    The False Claims Act's *Qui Tam* Provisions Violate Article II Of The United States Constitution.......................................................................40

A.    The False Claims Act's *Qui Tam* Provisions Violate The Executive Vesting And Take Care Clauses..................................................41

B.    The False Claims Act's *Qui Tam* Provisions Also Violate The Appointments Clause ...............................................................42

CONCLUSION ...............................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Johnson*
    355 F.3d 1179 (9th Cir. 2004) ................................................................................... 22

*Allison Engine Co. v. United States ex rel. Sanders*
    553 U.S. 662 (2008) ................................................................................................... 23

*Am. Ship Mgmt. v. United States*
    25 C.I.T. 1033 (2001) ................................................................................................. 12

*Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*
    190 F.3d 729 (6th Cir. 1999) ..................................................................................... 29

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .............................................................................................. 13, 14

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ....................................................................................... 1

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .............................................................................................. 14, 21

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) .............................................................................. 14, 15

*Buckley v. Valeo*
    424 U.S. 1 (1976) ....................................................................................................... 34

*Burke v. El Dorado Cnty. Sheriff's Off.*
    No. 2:23-cv-00789, 2024 U.S. Dist. LEXIS 78786 (E.D. Cal. Apr. 30, 2024) ........ 22

*Calisesi ex rel. United States v. Hot Chalk, Inc.*
    No. 13-cv-01150-PHX-NVW, 2015 WL 1966463 (D. Ariz. May 1, 2015) ............... 16

*In re Century Aluminum Co. Secs. Litig.*
    729 F.3d 1104 (9th Cir. 2013) ................................................................................... 14

*Collins v. Yellen*
    594 U.S. 220 (2021) .............................................................................................. 33, 36

*Cortez v. City of Porterville*
    5 F. Supp. 3d 1160 (E.D. Cal. 2014) ......................................................................... 28

*Davidson v. Kimberly-Clark Corp.*
    889 F.3d 956 (9th Cir. 2018) ..................................................................................... 14

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*Dworkin v. Hustler Mag. Inc.*
867 F.2d 1188 (9th Cir. 1989) ................................................................................ 4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014) ................................................................................ 14

*Free Enter. Fund v. PCAOB*
561 U.S. 477 (2010) ............................................................................................. 33

*Fritz v. United States*
535 F.2d 1192 (9th Cir.1976) ................................................................................. 7

*Gastelum v. Kohl's Inc.*
No. 1:21-CV-1740 JLT BAM, 2023 WL 2575825 (E.D. Cal. Mar. 20, 2023) ......................... 3

*Heller, Ehrman, White & MacAuliffe v. Babbitt*
992 F.2d 360 (D.C. Cir. 1993) ............................................................................... 7

*Island Industries, Inc. v. Sigma Corp.*
142 F.4th 1153 (9th Cir. 2025) ............................................................................... 5

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) ............................................................................... 14

*Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*
575 U.S. 650 (2015) ............................................................................................. 35

*Kendall v. Visa U.S.A., Inc.*
518 F.3d 1042 (9th Cir. 2008) ............................................................................... 21

*In re Late Fee & Over-Limit Fee Litig.*
528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................................... 21

*Lucia v. SEC*
585 U.S. 237 (2018) ....................................................................................... 34, 35

*Mazik v. Kaiser Permanente, Inc.*
No. 19-cv-00559, 2024 U.S. Dist. LEXIS 25397 (E.D. Cal. Feb. 13, 2024) ...................... 4, 16

*McCard v. Circor Int'l, Inc.*
628 F. Supp. 3d 1019 (E.D. Cal. 2022) .................................................................. 22

*Meyer Corporation v. United States*
No. 13-00154, 2021 WL 777788 (Ct. Int'l Trade Mar. 1, 2021) .................................... 20

*Miles v. Apex Marine Corp.*
498 U.S. 19 (1990) ................................................................................................. 7

*Moore v. Mars Petcare US, Inc.*
966 F.3d 1007 (9th Cir. 2020) ......................................................................... 14, 16

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*Name.Space Inc. v. Internet Corp. for Assigned Names & Numbers*
  795 F.3d 1124 (9th Cir. 2015).................................................................................... 21

*Nat'l Customs Brokers & Forwarders Assn. of Am. v. United States*
  731 F. Supp. 1076 (Ct. Int'l Trade 1990)............................................................. 11, 17

*Nissho Iwai Am. Corp. v. United States*
  786 F. Supp. 1002 (Ct. Int'l Trade 1992), *reversed in part*, 982 F.2d 505 (Fed. Cir.
  1992)......................................................................................................................... 12, 13

*Printz v. United States*
  521 U.S. 898 (1997) ....................................................................................................... 32

*Puri v. Khalsa*
  674 F. App'x 679 (9th Cir. 2017)................................................................................ 31

*Riley v. St. Luke's Episcopal Hosp.*
  196 F.3d 514 (5th Cir. 1999), *rev'd en banc*, 252 F.3d 749.................................... 36

*Riley v. St. Luke's Episcopal Hosp.*
  252 F.3d 749 (5th Cir. 2001) (en banc)................................................................. 32, 33

*San Luis Unit Food Producers v. United States*
  772 F. Supp. 2d 1210 (E.D. Cal. 2011).......................................................................... 3

*Satvati v. Allstate Northbrook Indem. Co.*
  634 F. Supp. 3d 792 (C.D. Cal. 2022)............................................................................ 4

*Schroeder v. United States*
  569 F.3d 956 (9th Cir. 2009).......................................................................................... 30

*Seila Law LLC v. CFPB*
  591 U.S. 197 (2020) ................................................................................................. 32, 34

*Sonner v. Premier Nutrition Corp.*
  971 F.3d 834 (9th Cir. 2020).......................................................................................... 30

*In re Stac Elecs. Sec. Litig.*
  89 F.3d 1399 (9th Cir. 1996).......................................................................................... 15

*State of Cal. ex rel. Mueller v. Walgreen Corp.*
  175 F.R.D. 631 (N.D. Cal. 1997) .................................................................................. 15

*Stoutt v. Travis Credit Union*
  512 F. Supp. 3d 1048 (E.D. Cal. 2021)....................................................................... 3, 4

*Synergy Sport Int'l, Ltd. v. United States*
  17 Ct. Int'l Trade 18 (1993) ........................................................................................... 13

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007) ...................................................................................................... 9

*Travis v. United States*
    2022 U.S. Dist. LEXIS 124627 (D.N.M. July 14, 2022) ....................................................... 6, 9

*United States ex rel. Berntsen v. Prime Healthcare Servs., Inc.*
    No. 11-cv-8214 PJW, 2017 WL 11636166 (C.D. Cal. Jan. 13, 2017) .................................... 31

*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*
    359 F. Supp. 3d 1088 (D. Utah 2019) ................................................................................. 5

*United States ex rel. Brown v. Celgene Corp.*
    2014 U.S. Dist. LEXIS 99815 (C.D. Cal. July 10, 2014) ...................................................... 28

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys. Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ...................................................................................... 14, 21

*United States ex rel. Chunie v. Ringrose*
    788 F.2d 638 (9th Cir. 1986) ............................................................................................. 4

*United States ex rel. Dresser v. Qualium Corp.*
    2016 U.S. Dist. LEXIS 93248 (N.D. Cal. July 18, 2016) ......................................................... 5

*United States ex rel. Garst v. Lockheed-Martin Corp.*
    328 F.3d 374 (7th Cir. 2003) ........................................................................................... 24

*United States ex rel. Gross v. AIDS Research Alliance-Chicago*
    415 F.3d 601 (7th Cir. 2005) ........................................................................................... 24

*United States ex rel. Grubbs v. Ravikumar Kanneganti*
    565 F.3d 180 (5th Cir. 2009) ........................................................................................... 16

*United States ex rel. Henig v. Amazon.com, Inc.*
    No. 19-cv-05673, 2025 U.S. Dist. LEXIS 869 (Jan. 3, 2025) ............................................... 28

*United States ex rel. Kelly v. Boeing Co.*
    9 F.3d 743 (9th Cir. 1993) .............................................................................................. 34

*United States ex rel. Lesnik v. ISM Vuzem d.o.o.*
    112 F.4th 816 (9th Cir. 2024) .......................................................................................... 29

*United States ex rel. Lupo v. Quality Assur. Servs.*
    242 F. Supp. 3d 1020 (S.D. Cal. 2017) .............................................................................. 16

*United States ex rel. McBride v. Warren*
    848 F.3d 1027 (D.C. Cir. 2017) ........................................................................................ 23

*United States ex rel. Montcrief v. Peripheral Vascular Assocs.*
    133 F.4th 395 (5th Cir. 2025) .......................................................................................... 32

Case No. 2:16-CV-1805-DC-JDP

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*United States ex rel. Osinek v. Permanente*
  No. 13-cv-03891-EMC, 2023 WL 4054279 (N.D. Cal. June 15, 2023) ................................. 16

*United States ex rel. Petratos v. Genentech, Inc.*
  141 F. Supp. 3d 311 (D.N.J. 2015) ...................................................................................... 29

*United States ex rel. Polansky v. Executive Health Resources, Inc.*
  599 U.S. 419 (2023) ........................................................................................ 7, 31, 32

*United States ex rel. Sansbury v. LB&B Assocs., Inc.*
  58 F. Supp. 3d 37 (D.D.C. 2014) ....................................................................................... 5

*United States ex rel. Spicer v. Westbrook*
  751 F.3d 354 (5th Cir. 2014) ............................................................................................. 35

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*
  751 F. Supp. 3d 1293 (M.D. Fla. 2024) (appeal pending) ..................................... 32, 33, 35, 36

*United States v. Arthrex, Inc.*
  594 U.S. 1 (2021) .............................................................................................................. 33

*United States v. Cockerell Dermatopathology, P.A.*
  2021 U.S. Dist. LEXIS 201997 (N.D. Tex. Oct. 20, 2021) ....................................................... 29

*United States v. Donziger*
  38 F.4th 290 (2d Cir. 2022) ................................................................................................. 35

*United States v. Hitachi Am., Ltd.*
  172 F.3d 1319 (Fed. Cir. 1999) ........................................................................................... 18

*United States v. Inn Foods, Inc.*
  560 F.3d 1338 (Fed. Cir. 2009) ...................................................................................... 17, 18

*United States v. NEC Corp.*
  11 F.3d 136 (11th Cir. 1993) .............................................................................................. 35

*United States v. Peters*
  2024 U.S. Dist. LEXIS 122120 (E.D. Cal. July 10, 2024) ....................................................... 31

*United States v. Q Int'l Courier, Inc.*
  131 F.3d 770 (8th Cir. 1997) .............................................................................................. 29

*United States v. Texas*
  599 U.S. 670 (2023) ........................................................................................................... 34

*United States v. Universal Fruits & Vegetables Corp.*
  370 F.3d 829 (9th Cir. 2004) .................................................................................... *passim*

*Universal Health Servs., Inc. v. United States ex rel. Escobar*
  579 U.S. 176 (2016) ..................................................................................................... 14, 23

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*
  529 U.S. 765 (2000) ................................................................................................. 31

*Vernon v. Qwest Commc'ns Int'l, Inc.*
  643 F. Supp. 2d 1256 (W.D. Wash. 2009) ............................................................... 10

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ................................................................................. 15

*Wisconsin Bell, Inc. v. United States ex rel. Heath*
  145 S. Ct. 498 (2025) ........................................................................................... 7, 32

**Statutes**

19 U.S.C. § 1401a(b)(1) ......................................................................................... 12, 30

19 U.S.C. § 1484 ............................................................................................. 11, 17, 18

19 U.S.C. § 2071 ....................................................................................................... 11

28 U.S.C. § 1340 ......................................................................................................... 7

28 U.S.C. § 1582 ................................................................................................... *passim*

31 U.S.C. § 3729 ................................................................................................... *passim*

31 U.S.C. § 3730 ..................................................................................... 5, 33, 34, 35

31 U.S.C. § 3731(c) .................................................................................................... 5

31 U.S.C. §§ 3729-3733 .......................................................................................... *passim*

U. S. Const. Article II ...................................................................................... 31, 32, 33

**Other Authorities**

19 C.F.R. § 141.0 ...................................................................................................... 11

19 C.F.R. § 141.17 .................................................................................................... 11

19 C.F.R. § 141.18 .................................................................................................... 11

19 C.F.R. § 141.20 .................................................................................................... 11

19 C.F.R. § 141.36 .................................................................................................... 11

19 C.F.R. § 141.37 .................................................................................................... 11

19 C.F.R. § 152.101 .............................................................................................. 12, 30

19 C.F.R. § 152.102(f) ......................................................................................... 12, 30

19 C.F.R. § 152.103(a)(5)(ii) ................................................................................ 30

A. Cavallo et al., *Are Tariffs Raising U.S. Retail Prices?*, EconoFact, Dec. 4, 2025
.............................................................................................................................. 19, 20

*About the Court*, U.S. Court of Int'l Trade (publicly available at
https://www.cit.uscourts.gov/about-court) ........................................................ 6, 9

Benn Steil, *Who Pays Trump's Tariffs*, Council on Foreign Relations, Nov. 4 2025 ................... 19

Constitutionality of the Qui Tam Provisions of the False Claims Act, 13 Op. O.L.C. 207,
209 (1989) ........................................................................................................ 32

Fed. R. Civ. P. 8 ........................................................................................... 13, 30

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b) ............................................................................. 3, 4, 9, 30

Fed. R. Civ. P. 12(c) ..................................................................................... *passim*

Fed. R. Evid. 201 ................................................................................................. 6

Lawrence J. Bogard, *Customs Law and Admin. Commentary* § 1:41 (2025) .............................. 17

*U.S. Customs & Border Protection Headquarters Ruling* H331224 (March 5, 2024) ................. 13

U.S. Customs and Border Protection, *What Every Member of the Trade Community Should
Know About: Bona Fide Sales & Sales For Exportation To The United States* ...................... 19

U.S. Dep't of Just., *False Claims Act Settlements and Judgments Exceed $6.8B in Fiscal
Year 2025*, Jan. 16, 2026 .................................................................................. 6, 36

U.S. Dep't of Just., *The False Claims Act*, Jan. 15, 2025 ................................................... 7

**SUMMARY OF ARGUMENT**

The United States' Complaint In Intervention ("Complaint"), Compl., ECF No. 66, alleges a scheme between Barco Uniforms, Inc. ("Barco") and the "Defendant Chan Companies," in which Barco caused and/or conspired to cause the submission of allegedly false Customs Declaration Forms, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

This Court should grant judgment on the pleadings because it lacks subject matter jurisdiction over this matter. For more than 20 years, it has been Ninth Circuit law that the U.S. Court of International Trade—the Article III court assigned responsibility for customs duties disputes—has exclusive jurisdiction over a customs-duties-based False Claims Act ("FCA") action commenced by the United States, such as this one.

Moreover, regardless of how this Court rules on jurisdiction, the Government's Complaint fails to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."). Thus, Barco is entitled to a judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c) on all counts in the Complaint.

Finally, the *qui tam* portion of the FCA is unconstitutional and that portion of the matter should be dismissed.

**PROCEDURAL BACKGROUND**

I.      **Procedural History**

On August 1, 2016, Relator Toni S. Lee filed, under seal, a *qui tam* complaint. Relator's Compl., ECF No. 1. Relator named, as defendants, Barco, Able Allied Limited, Nathan Global Direct, Inc., J & K Garment, Inc., and "Does 1 through 10." *Id.* Relator's complaint asserted four counts, one each under:

- 31 U.S.C. § 3729(a)(1)(A) – False Claims;
- 31 U.S.C. § 3729(a)(1)(B) – False Statements;
- 31 U.S.C. § 3729(a)(1)(C) – Conspiracy; and
- 31 U.S.C. § 3729(a)(1)(G) – "Reverse" FCA Claims.

Almost nine years later, on April 11, 2025, the United States filed its Complaint, ECF No. 66, containing four claims for relief:

- Count I – 31 U.S.C. § 3729(a)(1)(G) Improperly Avoiding or Decreasing Obligation to Pay (Reverse False Claims);

- Count II – 31 U.S.C. § 3729(a)(1)(G) False Statements Material to an Obligation to Pay Money to the Government;

- Count III – 31 U.S.C. § 3729(a)(1)(C) False Claims Act Conspiracy; and

- Count IV – Unjust Enrichment.

It also added five new defendants (Kenny Chan, David Chan, Mega Goodwill LTD, JS Garment Co., and Superway Import & Export, Inc.) to the four corporate defendants named in Relator's Complaint. *Id.*[1] The Complaint did not include any "Doe" defendants. *Id.*

The Complaint generally alleges the following: Barco sells licensed uniforms to large businesses, including restaurant and fast-food chains and health care providers, and often sourced uniforms from the Chan Defendants who, since "at least 2004" manufactured the uniforms in the People's Republic of China ("PRC") and "then imported into the United States from the PRC." *Id.* at ¶¶ 1-2. Over approximately a decade, Barco engaged in a conspiratorial scheme with the Chan Defendants to reduce Barco's costs by causing the Chan Defendants, as the importers of record, to file customs declarations that falsely undervalued the items. *Id.* at ¶¶ 5-13. As alleged in the Complaint, the scheme was a product of a meeting (or meetings) between Michael Donner, Barco's CEO at the time, and defendant Kenny Chan in which they agreed "to alter the duty cost." *Id.* at ¶ 83. The Complaint further alleges that the scheme was memorialized and directed through the use of "contemporaneous business records that Barco called 'cost breakdown sheets,' or 'cost detail sheets,' or simply 'cost sheets.'" *Id.* at ¶ 88. The cost sheets were created by Relator, "around the time she began working at Barco, in approximately 2011, to better understand and compare suppliers' bids. She also created the cost sheet with the long-term aim to evaluate

---

[1] The Government's Complaint groups Able Allied Limited; Nathan Global Direct, Inc.; J & K Garment, Inc.; Mega Goodwill LTD; JS Garment Co.; Superway Import & Export, Inc.; and David Chan and Kenny Chan together as the "Chan Defendants" and treats them as a single entity. *Id.* at ¶ 1.

whether FOB or DDP incoterms would better benefit Barco." *Id.* at ¶ 93. According to the Complaint:

> Barco developed cost sheets to itemize every cost incurred by the Defendant Chan Companies and Barco's other suppliers, including fabric, fabric waste, manufacturer profit, freight/shipping cost, and labor cost. Thus, for example, the cost sheet for a uniformed chef's coat identified details such as the Barco style number, the size range to be offered, the type of fabric required by the Barco customer (e.g., woven twill, with further numerical descriptors), the various items of trim to be affixed to the uniform (e.g., buttons and restaurant logos), and any embroidery to be added. The completed cost sheet identified a specific cost associated with each material component (e.g., $4.40 for fabric, $0.46 for the cover button, etc.).

*Id*. at ¶ 89.

The Complaint identifies three cost sheets that allegedly contain entries that undervalue the duty amount for the goods described in the cost sheet and allegedly bear some connection to a false declaration of value on a 7501/Entry Form.[2] Compl. Ex. 7-A, ECF No. 65-7; Compl. Ex. 8-A, ECF No. 65-8.

On July 16, 2025 Barco Answered. ECF No. 89. On July 7, 2025, Defendant Kenny Chan filed a motion to dismiss the complaint against him, ECF No. 88, which is pending.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." If a party raises an issue about the court's subject matter jurisdiction in a 12(c) motion, the court treats the motion as if it were brought under Rule 12(b)(1). *San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011); *Stoutt v. Travis Credit Union*, 512 F. Supp. 3d 1048, 1050 (E.D. Cal. 2021); *Gastelum v. Kohl's Inc.*, No. 1:21-CV-1740 JLT BAM, 2023 WL 2575825, at *4 (E.D. Cal. Mar. 20, 2023). A motion brought under Rule 12(c) is "functionally identical" to one

---

[2] Exhibit 3 of the Complaint contains what the Government describes as a "compilation of cost sheets." Compl. at ¶ 113. But the Complaint does not allege this "compilation of cost sheets" ever led to an import (much less an import with inaccurate Customs declarations). As such, this Motion only addresses the three cost sheets from Exhibits 7-A and 8-A that are relevant to the alleged conduct.

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

brought under Rule 12(b), and "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Stoutt*, 512 F. Supp. 3d at 1050 (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)); *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 800 (C.D. Cal. 2022) (granting defendant's Rule 12(c) motion without leave to amend for a breach of contract claim because the plaintiff did not identify a contractual provision that had been breached, and no additional facts could sustain a breach of contract claim). Critically, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *Mazik v. Kaiser Permanente, Inc.*, No. 19-cv-00559, 2024 U.S. Dist. LEXIS 25397, at *13 (E.D. Cal. Feb. 13, 2024) (citing *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986)).

## ARGUMENT

### I.  This Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction

This case may not continue in this Court, or any federal district court, because the Court lacks subject matter jurisdiction over this action. As the Ninth Circuit has held, the Court of International Trade has exclusive jurisdiction over FCA cases such as this, commenced by the United States seeking to recover unpaid customs duties.

Congress long ago granted the United States Court of International Trade ("CIT") nationwide jurisdiction over civil actions arising out of the customs and international trade laws of the United States. 28 U.S.C. § 1582. The Ninth Circuit has recognized that the CIT "shall have *exclusive jurisdiction* of any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover customs duties." *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 832 (9th Cir. 2004) ("*Universal Fruits*") (citing 28 U.S.C. § 1582(3)) (emphasis added).

In *Universal Fruits,* the United States commenced a FCA lawsuit against the defendant alleging that "on four separate occasions, Universal had filed false customs documents indicating that South Korea, rather than China, was the origin of the garlic it was importing." *Id.* at 832. Similar to this case, the Government alleged that the defendant violated the "reverse false claims" FCA provision, which imposes liability for "mak[ing], us[ing], or caus[ing] to be made or used, a

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government." *Id.* at 832 (quoting 31 U.S.C. § 3729(a)(7) (2004) (later recodified as 31 U.S.C. § 3729(a)(1)(G))). The Ninth Circuit concluded that the federal district courts lack jurisdiction to hear these FCA cases, as the CIT enjoys exclusive jurisdiction over them. *Id.* at 837. The Circuit recently reaffirmed the *Universal Fruits* holding. *Island Industries, Inc. v. Sigma Corp.*, 142 F.4th 1153, 1162 n.6 (9th Cir. 2025) ("*Island Industries*").[3]

Although the Ninth Circuit has not addressed whether the CIT enjoys exclusive jurisdiction after intervention, the Court's reasoning applies with equal force to cases commenced by the United States through intervention. There can be no dispute that the government "commenced" this action by filing its Complaint. ECF No. 66. The Government's complaint supersedes the relator's complaint and has become the operative pleading for the intervened claims. *United States ex rel. Dresser v. Qualium Corp.*, 2016 U.S. Dist. LEXIS 93248, at *32 (N.D. Cal. July 18, 2016) (citing *United States ex rel. Sansbury v. LB&B Assocs., Inc.*, 58 F. Supp. 3d 37, 47 (D.D.C. 2014) ("by automatic operation of [the FCA statute], the Government's complaint in intervention becomes the operative complaint as to all claims in which the government has intervened")); *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1127 (D. Utah 2019) ("The Government's complaint superseded the relators' complaint and became the operative pleading."); *see also* 31 U.S.C. § 3731(c) ("If the Government elects to intervene and proceed with an action brought under [31 U.S.C. § 3730(b)], the Government may file its own complaint or amend the complaint of a person who has brought an action under [31 U.S.C. § 3730(b)] to clarify or add detail to the claims in which the Government is intervening and *to add any additional claims* with respect to which the Government contends it is entitled to relief.") (emphasis added). The Government did not amend the relator's complaint;

---

[3] The Circuit in *Island Industries* reiterated the CIT's exclusive jurisdiction in cases commenced by the U.S. but held that non-intervened FCA lawsuits are not "commenced by the United States" and therefore "§ 1582 poses no jurisdictional obstacle to a relator's FCA action in federal district court to recover customs duties." *Island Industries*, 142 F.4th at 1163. Like *Universal Fruits*, it did not address intervened FCA lawsuits.

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

only the same party may amend its own complaint. Rather, through intervention, the Government displaced Relator's complaint.

*Universal Fruits* furthers the CIT's fundamental purpose, which is to "ensure[] expeditious procedures, avoid[] jurisdictional conflicts among federal courts, and provide[] national uniformity in the judicial decision-making affecting import transactions." *Travis v. United States*, 2022 U.S. Dist. LEXIS 124627, at *3 (D.N.M. July 14, 2022) (quoting *About the Court*, U.S. Court of Int'l Trade (publicly available at https://www.cit.uscourts.gov/about-court)). This case demonstrates the importance of these safeguards. Relator's complaint was filed, under seal, in 2016. ECF No. 1. The Government's eight year pre-filing investigation was anything but "expeditious." Additionally, given the number of FCA cases in which the United States intervenes, allowing Government-involved FCA cases arising from customs duties to proceed in all 94 federal district courts would vitiate the congressional purpose underlying the CIT's exclusive jurisdiction over cases arising under the customs laws.[4]

To permit the Government to bring a customs/tariff FCA case by intervention would be to enable it to inflict the very harm the Circuit cautioned against: an end-run around the statutory restriction. As the Ninth Circuit observed:

> Furthermore, if the government could bring an FCA claim in district court whenever a party fraudulently withholds customs duties, then the exclusive jurisdiction over

_____

[4] According to the Department of Justice, in 2025, the most recent year for which statistics are available, there were 1,297 new qui tam matters and 401 new non-qui tam matters, illustrating the magnitude of this potential end-run. Press Release, U.S. Dep't of Just., *False Claims Act Settlements and Judgments Exceed $6.8B in Fiscal Year 2025*, Jan. 16, 2026 and its attached *Statistics Sheet* (publicly available at https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-68b-fiscal-year-2025). The Court may take judicial notice of this statement. Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

actions to recover customs duties in all such instances would become a virtual nullity …

*Universal Fruits*, 370 F.3d at 836 (warning against "circumvent[ing]" of "congressional grant[s] of exclusive jurisdiction") (citing *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 992 F.2d 360, 363-64 (D.C. Cir. 1993)) (footnote omitted).

When Congress enacted the Tariff Act, in 1980, the FCA was already on the books, and had been since its original enactment in 1863. U.S. Dep't of Just., *The False Claims Act*, Jan. 15, 2025 (publicly available at https://www.justice.gov/civil/false-claims-act). When enacting a law, courts "assume Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). Had Congress intended to carve out so large an exception to the CIT's exclusive jurisdiction as allowing the Government to commence FCA cases through intervention, it would have made that exception explicit. Indeed, in establishing the jurisdiction of the federal district courts in 1948, Congress did precisely that; it excepted from the district courts' original jurisdiction "matters within the jurisdiction of the Court of International Trade." 28 U.S.C. 1340. What Congress did in 1948, it could have done in 1980 had it intended to do so. *See Universal Fruits*, 370 F.3d at 833 ("[I]t is well-established that §1582(a) means what it says: the jurisdiction of the Customs Court is exclusive. Even when other, broadly-worded statutes seem to confer concurrent jurisdiction on the district courts, the exclusivity of Customs Court jurisdiction reflects a policy of paramount importance which overrides the literal effect of other statutes.") (quoting *Fritz v. United States,* 535 F.2d 1192, 1195 (9th Cir.1976)) (footnote omitted).

Additionally, to allow a private citizen, acting as a relator, to effectively overrule a congressional grant of exclusive authority, would represent a broadly unconstitutional delegation of governmental authority that four Supreme Court Justices have warned against, as discussed *infra* Section IV. *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 442 (2023) (Kavanaugh, J., joined by Barrett, J., concurring); *id.* at 449 (Thomas, J., dissenting); *see also Wisconsin Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., joined by Thomas, J., concurring). For these reasons, this Court lacks subject matter jurisdiction and should dismiss the Complaint in favor of the CIT. 28 U.S.C. § 1582.

### A.    At A Minimum, The United States Commenced Three New Counts All of Which Must be Dismissed

Even if the Court were to take the unprecedented step of finding that this action is not, in whole, commenced by the United States, there can be no dispute that the United States' Complaint contains two FCA counts not present in Relator's original Complaint, new theories of FCA liability, new defendants, new alleged conspiracies, and a new claim for unjust enrichment.

The Government's Complaint contains two FCA counts not included in Relator's complaint; one under the "Improperly Avoids or Decreases Obligation to Pay" prong, Compl. ¶ 183-191 (Count I), and one under the "Making, Using, or Causing to be Made or Used, False Records or Statements Material to an Obligation to Pay Money to the Government" prong. *Id.* ¶ 192-198 (Count II). By contrast, the Relator's Complaint contains a single 31 U.S.C. § 3729(a)(1)(G) (false record or statement) count. Relator's Compl. ¶¶ 71-76 (Count IV). Although the Relator does not identify which 31 U.S.C. § 3729(a)(1)(G) prong applies, the text of Count IV speaks only of "non-payment" of "money or property" and does not identify any alleged false statements; as such, the "Improperly Avoids or Decreases Obligation to Pay" prong is the applicable prong. Thus, Count II of the Government's Complaint is new, and explicitly seeks recovery for duties allegedly underpaid. Compl. ¶¶ 196-197. The Government's Complaint alleges that Barco conspired with five Defendants not named in Relator's complaint; Kenny Chan, David Chan, Mega Goodwill LTD, JS Garment Co., and Superway Import & Export, Inc. Compl. ¶¶ 199-206. *Compare* Compl. *with* Relator's Compl.[5]

The Government's Complaint also asserts one count for Unjust Enrichment that is not asserted by the Relator, who has no standing to assert such a claim on the Government's behalf. *Compare* Compl. ¶¶ 207-211 (Count IV – "Unjust Enrichment") *with* Relator's Compl. ¶¶ 55-76

---

[5] Relator's Complaint, notably, identifies Kenny Chan and David Chan and includes detailed allegations relating to their roles, *see e.g.*, Relator's Compl. ¶¶ 19-21, 41-43, 45-46, but does not name them as defendants.

(no counts for unjust enrichment). Thus, under *Universal Fruits*, this Count must be dismissed because it relates to payment of customs duties and was commenced by the Government.[6]

Accordingly, because the Government's claims regarding false records or statements material to an obligation under 31 U.S.C. § 3729(a)(1)(G) (Count II) and its unjust enrichment count (Count IV) are entirely new, as is the portion of its conspiracy count (Count III) alleging that Barco and the five new defendants conspired to violate the FCA, under *Universal Fruits*, this Court must dismiss those Counts, or transfer them to the CIT, due to a lack of subject matter jurisdiction over these portions of the Government's Complaint.

## II.    The Complaint Fails to Allege Sufficient Facts Under Cognizable Legal Theories

### A.    Summary of the Argument

The Complaint recites in detail the applicable law, customs regulations, commercial standards, and Barco's business dealings with other defendants,[7] but offers only scant, generalized allegations to support its FCA counts (Counts I, II, and III), which are insufficient to state a cognizable FCA claim.

First, the Complaint offers only implausible, generalized allegations of the alleged conspiracy that, even if true, do not establish wrongdoing. It vaguely alludes to one or more meetings between Michael Donner and Kenny Chan and/or David Chan but fails to provide the time and date of any such meetings, other significant details, or the substance of any unlawful

---

[6] Given the inextricably intertwined relationship between the Relator's counts and the Government's counts, it is not feasible to disaggregate the two. Were the Court to assert jurisdiction over the intervened counts (as distinguished from the new counts), Barco would be subjected to litigating the same set of operative facts in two different fora, which would defeat the congressional purpose in establishing the CIT to "avoid[] jurisdictional conflicts" and "provide[] . . . uniformity in the judicial decision-making affecting import transactions." *Travis*, 2022 U.S. Dist. LEXIS 124627 at *3 (quoting *About the Court*, U.S. Court of Int'l Trade (publicly available at https://www.cit.uscourts.gov/about-court)).

[7] For present purposes, Barco accepts the Complaint's factual allegations, documents relied on in the Complaint, and matters that may be judicially noticed. *See e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

agreement—alleging only that they agreed to "alter duty cost[s]." Compl. ¶ 204. Duty costs can be altered (and, indeed, reduced) in a myriad of lawful ways and nowhere does the Complaint factually allege that Barco agreed to falsify duty costs. Further, despite alleging a decade-long scheme, the Complaint identifies only three Barco cost sheets containing inaccurate duty amounts linked to imports and fails to state who entered the allegedly false duty amount entries, or when or where they were entered.

Second, the Complaint fails to plead any facts alleging who, if anyone, knew any duty entries in the cost sheets or the 7501s were false. As such, it is equally plausible that they were erroneous, later corrected, properly based upon values consistent with the First Sale Doctrine, or never used.

Third, the Complaint fails to plead any facts to support any of the essential elements— falsity, scienter, materiality, and causation—of an FCA violation. Specifically, allegations concerning the cost sheets' alleged *falsity* are conclusory and also fail to allege the required time, date, and place of the alleged false statements, as required. Although *knowledge* can be pled generally, the Complaint fails to plead any facts that would support an inference that Barco knew or should have known that the Importer of Record ("IOR")'s 7501s contained false duty declarations. As to Count II, the Complaint fails to allege facts that would show that the allegedly false entries in Barco's internal company documents, the cost sheets, were *material* to an obligation to pay money to the Government. The Complaint also fails to allege any *causal connection* between Barco's allegedly false cost sheets and the duties declared by the IOR. To the contrary, a comparison of the duty entries in Barco's cost sheets and the duty entries in the IOR's form 7501s show they do not match. The Complaint also fails to allege the "*obligation*" to pay the Government that is the necessary predicate for its "reverse" FCA counts.

Finally, the Complaint fails to allege sufficient facts to support an unjust enrichment claim. Unjust enrichment is an equitable remedy available only where the plaintiff has an inadequate remedy at law. Here, the Government's exclusive remedy is the Court of International Trade. Second, even if unjust enrichment were a remedy available to the government, the failure to plead causation is as fatal to its unjust enrichment claim as it is fatal to its FCA claims. See e.g., *Vernon*

*v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1267 n.18 (W.D. Wash. 2009) (treating conferral of a benefit as a causal element). Accordingly, the Court should grant judgment on the pleadings to Barco.

### B.   Background and Regulatory Framework

#### 1.   Importation is Governed by A Robust and Complex Regulatory Framework and Settled Commercial Practices

All merchandise imported into the United States must be appraised in accordance with the Tariff Act of 1930. United States Customs and Border Protection ("CBP") is the agency that, among other responsibilities, is charged with enforcing the Tariff Act. 19 U.S.C. § 2071. Duties and liability for their payment accrue at the time of arrival within the Customs territory of the United States, when there is intent to unload. "Entry" under CBP regulations is the formal process and documentation for importing goods into a country. 19 C.F.R. § 141.0a(a). The "Importer of Record" is the individual or entity legally responsible for ensuring imported goods comply with all CBP laws, filing necessary documents (like entry summaries, bills of lading), properly classifying products, and paying duties/taxes, (even if done by a third party, such as a licensed customs broker). 19 U.S.C. § 1484(a); 19 C.F.R. § 141.20; and 19 C.F.R. §§ 141.17 -.18 and 141.36 and .37. Although any one of a number of individuals or entities in the import supply chain, such as the manufacturer, distributor, import broker, purchaser, can qualify to be the IOR, the statute is clear on its face: there can be only one IOR for an import. 19 U.S.C. § 1484 (specifying that only "*one* of the parties qualifying as 'importer of record'" has responsibility for making and completing entry) (emphasis added); *Nat'l Customs Brokers & Forwarders Assn. of Am. v. United States*, 731 F. Supp. 1076, 1080 (Ct. Int'l Trade 1990) ("Congress indicated that 'one of the parties qualifying as "importer of record"' was to engage in the acts necessary to comply with the requirements of section 1484."). Liability for duties constitute a personal debt of the IOR. 19 U.S.C. § 1484.

In an international sale, the buyer and seller negotiate who will bear responsibility for the costs, risks, and logistics, like transport, insurance and customs clearance, following globally recognized rules published by the International Chamber of Commerce known as Incoterms.

Compl. ¶ 60. The Incoterms relevant to this matter are Delivered Duty Paid ("DDP") and Free on Board ("FOB"). Under DDP, the seller bears responsibility and risks for all duties, costs of transportation, insurance, taxes, and other charges." *Id.* ¶ 62. By contrast, under an FOB term, the buyer assumes responsibility for paying customs duty, as well as other charges. *Id.* ¶¶ 64-65. Here, the allegedly false or fraudulent transactions all related to DDP purchases. *Id.* ¶¶ 92, 149-151. Thus, the Chan Defendants—as the alleged sellers in a DDP agreement—were legally responsible for determining and paying the appropriate duty amount.

### 2.    Calculating Valuation For Duty Purposes

The value of the imported good forms the bases for the applicable duty. 19 U.S.C. § 1401a; 19 C.F.R. § 152.101. Federal law provides for five methods of valuation, which must be applied in sequential order:

- Transaction value,
- Transaction value of identical or similar merchandise,
- Deductive value,
- Computed value, and
- A derived (fallback) method reasonably adjusted to circumstances.

*Id.* Only the first, transaction value, is applicable here and is defined as the "price actually paid or payable for the merchandise when sold for exportation to the United States" plus certain statutory additions. 19 U.S.C. §1401a(b)(1).

The "price actually paid or payable" is the total payment (whether direct or indirect), excluding any costs, charges, or expenses incurred for transportation and related services incident to international shipment from the country of exportation to the place of importation in the United States. *See* 19 C.F.R. § 152.102(f). The various costs excluded from the valuation calculation are commonly known as "non-dutiable costs." *See e.g., Am. Ship Mgmt. v. United States*, 25 C.I.T. 1033, 1035 (2001).

In a multi-tiered transaction, an IOR can declare the transaction value reported to CBP based on a prior sale in the source country. *Nissho Iwai Am. Corp. v. United States*, 786 F. Supp. 1002 (Ct. Int'l Trade 1992), *reversed in part*, 982 F.2d 505 (Fed. Cir. 1992). This is referred to as the "First Sale Doctrine." Under the First Sale Doctrine, an importer can calculate the duty based

on the price it paid for the goods, rather than its price to its buyer. A common multi-tiered transaction involves the manufacturer selling the good to a "middleman" company for export to a foreign buyer. The following illustration depicts the First Sale Doctrine as applied to the allegations in this case:



In the above scenario, the customs duty is calculated on the sale from the manufacturer to the distributor, rather than the price paid by the buyer. *See id.* (holding that, in a multi-tiered sale transaction, if both the manufacturer-to-middleman price and middleman-to-buyer price are viable transaction values, the earlier (lower) price is used as the "transaction value" for U.S. customs valuation purposes); *Synergy Sport Int'l, Ltd. v. United States*, 17 Ct. Int'l Trade 18, 20 (1993) (approving valuation based on first sale for export made by a Chinese manufacturer); *U.S. Customs & Border Protection Headquarters Ruling* ("HQ") H331224 (March 5, 2024) (first sale transaction value appraisement may be utilized for the transaction between foreign vendor and middleman for clothing items subsequently imported into the United States); HQ H310747 (May 21, 2020) (sale between Spanish winery and Spanish middleman is a sale for export to the United States that may be used for appraisement purposes for U.S. customs value); HQ 563482 (June 29, 2006) (first sale between the manufacturer and middleman constitutes a *bona fide* arm's length sale and the merchandise was clearly destined for export to the United States; therefore price paid between manufacturer and middleman may serve as the basis of appraisement for U.S. customs valuation).

**C.    The Complaint Fails to Allege Sufficient Facts As Measured by FRCP Rules 8(a) and 9(b) to Establish Cognizable FCA Claims**

Rule 8 requires complaints include "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). An allegation merely consistent with a defendant's liability gets "the

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In evaluating plausibility, "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682). The Ninth Circuit affirmed the dismissal of a complaint because, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotation marks and citations omitted) (quoting *Iqbal*, 556 U.S. at 678; citing *Twombly*, 550 U.S. at 554).

Because the FCA is a fraud statute, the Complaint also must satisfy Rule 9(b)'s heightened particularity requirement. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n.6 (2016); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) ("we hold that claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations"). Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Thus, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quotations omitted) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail

to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). One purpose of Rule 9(b) is "to protect [defendants] from the harm that comes from being subject to fraud charges." *Bly-Magee*, 236 F.3d at 1018 (brackets original) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Courts routinely grant judgment on the pleadings when plaintiffs failed to meet these standards. *E.g., State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 634–35, 637 (N.D. Cal. 1997) (granting a Rule 12(c) motion because plaintiff failed to meet Rule 9(b) pleading requirements by relying on generalized allegations instead of specific examples of time, place, or content of an allegedly fraudulent scheme).

All Counts in the Complaint are premised on an agreement between Barco and the Chan Defendants relating to customs duties. Compl. ¶ 187 (Count I alleging that "all defendants … reach[ed] an agreement . . . to submit far less duties than owed"); ¶ 194 (Count II alleging that the defendants "agreed to make the bottom line as low as possible by underreporting duties owed"); ¶ 200 (Count III alleging that "all Defendants conspired to commit a violation of the FCA")); ¶ 210 (Count IV alleging that "Barco and the Chan Defendants agreed to a price that fraudulently underpaid duties"). The allegations are both implausible and lack particularity. The Government, moreover, fails to identify, much less plead with particularity, any "obligation" owed by Barco—a key element of its two "reverse" FCA claims (Counts I and II). Additionally, the Complaint fails to plead causation, a necessary element of the unjust enrichment claims. For these reasons, the Court should grant Barco judgment on the pleadings.

**D.      Under Any Pleading Standard, The Complaint Fails to Adequately Plead a Conspiracy**

The lynchpin of the Government's case is an alleged conspiratorial agreement entered into between Michael Donner and Kenny Chan. Yet regarding this agreement, the Complaint alleges only this:

> [a]s J.C. explained, J.C. and Toni Lee *sometimes* met with Kenny Chan, David Chan, and Donner regarding pricing. Donner then would continue to meet with the Chans, but privately, outside the presence of other Barco employees. Donner emerged from those meetings announcing that "We're keeping this specific brand with NGD, and here's how it works. … The only way to get it done is to—is to alter the duty cost."

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Compl. ¶ 83 (emphasis added).

Simply and irrefutably, the Government fails to allege the time, date, or place of a single conspiratorial or false statement. The generalized description of meetings that "sometimes" occurred over a ten-year period, fails to plead the time, date, or place of an alleged unlawful agreement, and for that reason Rules 9(b) and 12(c) require judgment in Barco's favor. *See e.g., United States ex rel. Lupo v. Quality Assur. Servs.*, 242 F. Supp. 3d 1020, 1027 (S.D. Cal. 2017) (affirming dismissal of FCA conspiracy count in which the complaint did "not identify . . . when, where, or how it happened" because this "does not meet any federal pleading standard, heightened or not"); *Moore*, 966 F.3d at 1019 ("a pleading must identify the who, what, when, where, and how of the misconduct charged ….") (citation omitted).[8]

The Complaint alleges that "Barco solicited and encouraged the Chans to reach a lower price by providing cost sheets with Barco's target price and leaving the duty cost to be manipulated to whichever amount was necessary to reach that price or specifying to the Chans the amount of duty that would be paid, both of which impermissibly resulted in artificially reduced duties." Compl. ¶ 202. But, again, the Complaint fails to allege the time, date or place of this conduct. In any event, solicitation and encouragement are not synonymous with an agreement.

### E.    The Complaint Fails To Exclude Equally Plausible Lawful Explanations for the Conduct Alleged.

Further, the Complaint alleges the cost sheets are evidence of the conspiracy. Compl. ¶ 88. Yet, the Complaint acknowledges that (1) the Relator herself introduced Barco to the use of cost sheets to obtain more favorable pricing, (2) Barco used the cost sheets to "better understand and compare suppliers' bids," *id.* at ¶ 93, and (3) Mr. Donner, Barco's President, "directed that the use

---

[8] "'General civil conspiracy principles apply to conspiracy claims under the False Claims Act.'" *Mazik*, 2024 U.S. Dist. LEXIS 25397, at *32 (quoting *Calisesi ex rel. United States v. Hot Chalk, Inc.*, No. 13-cv-01150-PHX-NVW, 2015 WL 1966463, at *13 (D. Ariz. May 1, 2015). "Thus, 'to prove a False Claims Act conspiracy, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *United States ex rel. Osinek v. Permanente*, No. 13-cv-03891-EMC, 2023 WL 4054279, at *8 (N.D. Cal. June 15, 2023) (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)).

of cost sheets become standard operating procedure"—a practice that "made its way into Barco's employee manual." *Id.* at ¶ 94. Thus, the Complaint acknowledges that use of the cost sheets was a legitimate and lawful business practice.

In attempting to assign responsibility for the IOR's action to Barco, the Complaint inaccurately alleges that Barco had obligations relating to the Form 7501's because "each Defendant served a role 'qualifying as importer of record,' including the owner of the merchandise, the purchaser, and consignee, [and] owed due care upon making entry whether on the Entry Summary/Form 7501 or not." *Id.* at ¶ 186. This allegation is wrong as a matter of law. The controlling statute is explicit: "Except as provided in sections 1490, 1498, 1552, and 1553 of this title, <u>one of the parties</u> qualifying as 'importer of record' under paragraph (2)(B), either in person or by an agent authorized by the party in writing, shall, using reasonable care—(A) make entry therefor by filing with" CBP the appropriate "documentation …." 19 U.S.C. § 1484(a)(1) (emphasis added). It is not a surprise therefore that Courts have found that only one party can be the IOR. *See e.g.*, *Nat'l Customs Brokers*, 731 F. Supp. at 1080 ("Congress indicated that "<u>one</u> of the parties qualifying as 'importer of record' was to engage in the acts necessary to comply with the requirements of section 1484.") (emphasis added).[9] That entity bears exclusive legal responsibility for the obligations and duties imposed by statute and regulation upon the IOR. *See* Customs Directive No. 3530-002A, June 2003 ("Section 484 provides that only the 'importer of record' has the right to make entry" and defines "Importer of Record" as "the owner <u>or</u> purchaser of the goods, <u>or</u> when designated by the owner, purchaser, or consignee, a licensed Customs broker. . . Only the importer of record (owner, purchaser, or Customs broker) may execute the declaration on an entry or entry summary.") (emphasis added); *see also* Lawrence J. Bogard, *Customs Law and Admin. Commentary* § 1:41 (2025) ("19 U.S.C.A. § 1484 transferred to the

---

[9] Where Congress intends a provision of the Tariff Act to apply only to the importer, it says so explicitly. *United States v. Inn Foods, Inc.*, 560 F.3d 1338, 1346 (Fed. Cir. 2009); *see e.g.*, 19 U.S.C. § 1484 (referring specifically to the "importer of record"); *id.* § 1485 (same); *id.* § 1505 (same).

importer of record the burden of using reasonable care in providing to CBP the correct classification, appraisement and rate of duty applicable to merchandise in entry documentation").

Entities that could be the IOR—but are not in fact the IOR—are not responsible for the actions of the IOR. *United States v. Hitachi Am., Ltd.*, 172 F.3d 1319, 1336 (Fed. Cir. 1999) (19 U.S.C. § 1484 applies "by [its] terms only to importers of record."); *United States v. Inn Foods, Inc.*, 560 F.3d 1338, 1346 (Fed. Cir. 2009) (distinguishing "importer" from "importer of record," noting that "where Congress intends a provision of the Tariff Act to apply only to the importer, it says so explicitly"); *see, e.g.*, 19 U.S.C. § 1484 (referring specifically to the "importer of record"); *id.* § 1485 (same); *id.* § 1505 (same). Absent alleging the date and time of any conspiratorial or false statements, the Complaint merely describes commercial price negotiations between a buyer and a seller of imported goods.

Against the acknowledgment that the cost worksheets served a legitimate business purpose, the Complaint identifies only three cost sheets containing allegedly inaccurate duty calculations, without identifying who supplied or entered the information, whether anyone relied on it, and what impact, if any, the information had on the IOR's customs declarations. And, as set forth below, it is undeniable that the duty calculations in Barco's cost sheets are not carried over into the IOR's Customs declarations. *See* discussion *infra* Section II.F.4. Thus, the Complaint fails to exclude an alternative lawful explanation that is at least as plausible as the Government's characterization; namely, that in attempting to lawfully negotiate favorable pricing over a ten-year period, three cost sheets contain inadvertent errors that have no relationship to Customs declarations completed by the IOR, or alternatively, that the amounts are properly calculated based upon an earlier transaction in a multi-tiered transaction (which is a lawful method of valuation under the First Sale Doctrine).

### 1. The Complaint Also Fails To Exclude Lawful Methods To Alter Duty Cost

Even if Michael Donner and Kenny Chan reached an agreement to "alter the duty cost," this allegation fails to tip the balance from lawful conduct to unlawful conduct, as there are lawful ways to "alter" duty costs, including lowering the seller's manufacturing costs, reducing its profit,

or utilizing the First Sale Doctrine, which allowed Barco's seller to calculate the duty based on the cost it paid its manufacturer, not the price it charges Barco.

The Complaint admits that the garments imported into the United States were manufactured by either (1) companies allegedly "controlled" by Kenny Chan, Compl. ¶ 67, or (2) subcontractors to a company controlled by Kenny Chan. *Id.* at ¶ 72. The goods were then imported into the United States by another company, such as Nathan Global Direct, *id.* at ¶ 149, Able Allied, *id.* at ¶ 150, or Mega Goodwill, *id.* ¶ 151, and then shipped to Barco's offices, *id.* at ¶ 147. Thus, the Government admits that there were middlemen between Barco and the factories.[10]

Nowhere does the Complaint allege that the goods were not or could not have been valued based on the First Sale Doctrine. The allegation that the Chan Defendants owned the factories does not foreclose valuing the goods on the basis of the First Sale Doctrine. *See* U.S. Customs and Border Protection, *What Every Member of the Trade Community Should Know About: Bona Fide Sales & Sales For Exportation To The United States,* p. 8 (laying out the basis for a legitimate First Sale transaction between related parties) (publicly available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/ICP-Bona-Fide-Sales-2005-Final.pdf) (citations omitted).

The First Sale Doctrine is widely and legitimately used to lower duty costs. Importers commonly negotiate lower prices from their suppliers, middlemen, and distributors. *See* Benn Steil, *Who Pays Trump's Tariffs*, Council on Foreign Relations (Nov. 4 2025) (publicly available at https://www.cfr.org/articles/who-pays-trumps-tariffs). Foreign manufacturers commonly demand lower prices from their own suppliers in light of tariffs. Alberto Cavallo et al., *Are Tariffs*

---

[10] The Government alleges that "Common names that were used on the fake invoices included each of the Defendant Chan Companies, plus other Chan entity names including, but not limited to, Suzhou Y&D Garment, Shanghai East Best Arts and Crafts, Suzhou Y&D Garment Co., Huianan Y&D Garment Co., Shanghai Grandsun Imp. & Exp., and UnityinLuv (also spelled Unity inLov). Often, this entity would be shown as 'selling' the items to one of Superway Import and Export, Able Allied, NGD, or Mega Goodwill (each of which is a Defendant Chan Company)." *Id.* at ¶ 137. Setting aside the conclusory allegations regarding the nature of the companies, this allegation, if true, supports the obvious explanation that the sales were multi-tiered transactions in which the transaction value on the CBP form was calculated pursuant the First Sale Doctrine.

*Raising U.S. Retail Prices?*, EconoFact (Dec. 4, 2025) (publicly available at https://econofact.org/are-tariffs-raising-u-s-retail-prices) (whether tariffs are passed on to consumers depends in part on how the tariff burden is "distributed between foreign producers, domestic businesses and consumers"). No law prohibits an importer from allocating the cost of tariffs to other parties through commercial negotiation.

If an importer promises a lower price, it would stand to reason that it will push its own supply chain to lower prices, in order to be able to absorb more of the tariff. Stripped of its conclusory and speculative allegations, which the Court may not consider, the Complaint's factual allegations are equally, if not more, consistent with a simpler, non-nefarious explanation than a fraudulent conspiracy: Barco had a long-standing relationship with the Chans whose companies operated as middlemen between Barco (the garment purchaser) and the factory (the garment manufacturer) and that the middleman (the IOR) valued the garments based on the price it paid the factory for the garments. Allowing the FCA plaintiffs to allege a FCA violation arising from alleged underpayment of customs duties without excluding the applicability of the First Sale Doctrine would place any U.S. purchaser of imported goods at risk of having the Government recast arms-length, commercial negotiations as a conspiracy to defraud Customs. The unfair predicament this foists on importers is compounded by the difficulties U.S. buyers, such as Barco, would have obtaining from foreign manufacturers the evidence necessary to determine the appropriate duty amount. *E.g.*, *Meyer Corporation v. United States*, No. 13-00154, 2021 WL 777788, at *51 (Ct. Int'l Trade Mar. 1, 2021) (noting that because the foreign supplier was not subject to litigation, the U.S. buyer could claim an inability to obtain pricing information).

Setting aside the Complaint's admission that the cost sheets served a legitimate business purpose, the mischaracterization of Barco's responsibility for the IOR's customs declarations, and ignoring the First Sale doctrine, the Complaint requires believing that an alleged co-conspirator would have a private meeting with another alleged co-conspirator and then announce the substance of the conspiracy to the very people he had excluded from the meeting. Compl. ¶ 83. The allegation is not merely implausible—it is absurd!

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

In sum, under any pleading standard, the Complaint fails to allege facts demonstrating (1) when the alleged conspiratorial agreement was made, (2) what was said that tipped the scales between a lawful reduction of the duty costs versus an unlawful agreement to falsify the costs, (3) who said it, (4) who entered the duty amounts on Barco's cost sheets, (5) when they were entered, (6) how they caused the IOR to submit false 7501s, (7) how the IOR calculated the duty amounts it paid Customs, and (8) Barco's knowledge of the correct duty amounts. It also fails to eliminate an equally, if not more, plausible explanation for the parties' conduct: arm's length negotiations in which Barco attempted to obtain the lowest price for the garments it purchased, relying on the seller to meet its obligations as the IOR. Because conspiracy allegations are rejected where there is "an obvious alternative explanation," the Court must grant judgment in Barco's favor. *Twombly*, 550 U.S. at 567; *Name.Space Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) ("We cannot . . . infer an anticompetitive agreement when factual allegations 'just as easily suggest rational, legal business behavior.'") (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008)); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (dismissing antitrust conspiracy claims because of "natural explanations" for alleged conduct).[11]

### F. The Complaint Fails To Plead With Specificity Facts To Support the FCA's Elements

The Complaint fails to plead facts sufficient to support any of the essential elements of an FCA violation—falsity, scienter, materiality, and causation. The Complaint fails to identify any "obligation" owed by Barco, which is also required for a "reverse" false claims. Moreover, the allegation that Barco (an entity that was not the IOR) bore responsibility for the IOR's customs declaration is wrong as a matter of law. These myriad deficiencies are fatal to the Complaint's FCA claims.

---

[11] Though originating in the antitrust context, the *Twombly* plausibility standard—including its requirement that a complaint exclude obvious alternative explanations for alleged conspiratorial conduct—applies to all civil actions, including FCA claims. *See, e.g., Cafasso*, 637 F.3d at 1055.

1. **The Conclusory Allegations Relating to Valuation Are Insufficient To Establish Falsity**

The Complaint's allegations concerning the cost sheets' alleged falsity are conclusory and also fail to allege the required time, date, and place of the alleged false statements. For example, it alleges that "Barco regularly listed duty rates and amounts even when the bid was on DDP Incoterms, listing customs duty amounts that were *falsely low*." Compl. ¶ 92 (emphasis added); *id.* ¶¶ 102-103 ("on the Defendant Chan Companies' cost sheet, rather than use an automatic formula to calculate duties as with other suppliers, Barco encouraged duties to be a number that lowered the bottom line, irrespective of what was truly due to the United States Government according to the *lawful duty rate*. Barco knew the duties were *falsely low*.") (emphasis added). The Complaint does not allege the time, date, or place of those allegedly false entries nor how they were false or by how much. "Conclusory allegations of law and unwarranted inferences" require dismissal of a complaint. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted); *Burke v. El Dorado Cnty. Sheriff's Off.*, No. 2:23-cv-00789, 2024 U.S. Dist. LEXIS 78786, at *11 (E.D. Cal. Apr. 30, 2024) (dismissing complaint because it "is devoid of any facts to support these conclusory allegations"); *McCard v. Circor Int'l, Inc.*, 628 F. Supp. 3d 1019, 1034 (E.D. Cal. 2022) (dismissing complaint that "makes conclusory allegations that Defendants knew the alleged statements about full-time employment, the director position, and traveling for his wife's medical appointments were false at the time they were made without alleging any facts to support this conclusion"). The Complaint's allegations are insufficient to establish that there were any falsities—a required element for Counts I, II and III—or that the falsity caused any FCA violations.

2. **The Complaint Fails to Plead Facts Establishing Barco's Scienter**

Although knowledge can be pled generally, the Complaint fails to plead any facts that would support an inference that Barco knew or should have known that the IOR's 7501s contained false duty declarations. The Government fails to identify any Barco employee that knew or should have known the 7501s contained false statements. Nor can it be plausibly inferred that Barco would have access to the information necessary to calculate duties, as there is no allegation that it

had access to information necessary to determine the seller's costs, such as its cost of goods, and which costs were dutiable and which were not. Nor does the Complaint offer any plausible reasons that a seller would disclose to its buyer all its production costs, especially not its cost of purchasing the garments from the factory, which would place it at risk of Barco negotiating with the factory directly.

### 3. The Complaint Fails to Plead a Factual Basis for Finding Barco's Cost Sheets to be Material to its Obligation to Pay Money to the Government.

The FCA counts have a materiality element, which requires proof that the allegedly false statement has "a natural tendency to influence, or be capable of influencing" the government's payment decision. 31 U.S.C. § 3729(b)(4); *Escobar*, 579 U.S. at 192-93. This standard is "demanding" and "rigorous." *Id.* at 194. Minor or insubstantial falsehoods do not satisfy this standard. *Id.* Proving materiality requires evidence that the false elements of a claim affected the government's decision to pay the claim. *Id.* at 196. Mere inferences based on legal or regulatory requirements do not suffice. *See United States ex rel. McBride v. Warren*, 848 F.3d 1027, 1033 (D.C. Cir. 2017) (affirming summary judgment against relator for failure to establish materiality where relator "offer[ed] no evidence in support of that proposition other than her own say-so, which is clearly insufficient"). It is not enough that compliance with a legal requirement is required for payment of the claim, or that the government would have the option to refuse payment based on the alleged falsity of the claim. *Escobar*, 579 U.S. at 195. The Government cannot rely on the materiality of cost sheets generally—it must plead with particularly the materiality of the allegedly false statements. As the Supreme Court has stated, "We start, as always, with the language of the statute." *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 668 (2008) (quotation omitted). To be actionable under the FCA, a false statement must be "material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(G) (imposing liability on any person who "knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government"). As an initial matter, the government does not allege that Barco entered the duty amounts in the cost sheets sent to the Chan Defendants, rather "Barco coded the Defendant Chan Company cost sheet to allow

any amount of duties to be entered." Compl. ¶ 102. There is no allegation, nor could there plausibly be one, that Barco's act of leaving the duty amount blank for the Chan Defendants to complete was material to the 7501's the Chan Defendants (or their brokers) completed. Moreover, the Government admits that for the cost sheets in which a duty amount is entered, the amounts "were often [but not always] identical or very close to the fraudulent duties later declared on the Entry Summaries/Form 7501s." *Id*. at ¶ 106. There is no allegation that Barco's duty amounts that were often (but not always) the same or similar to the IOR's amounts were material to the CBP. Thus, the Court should grant judgment on the pleadings on Counts I, II and III on this ground.

**4.**      **The Complaint Fails to Establish a Causal Connection Between Barco's Cost Sheets And The Allegedly False Claims**

Despite alleging a decade-long conspiracy, the Government fails to show a causal connection between the cost sheets attached to the Complaint and their corresponding 7501s. Notably, two of the four 7501s (Exhibits 1 and 6) lack a corresponding cost sheet. Accordingly, for these examples, the Government has failed to plead with particularity any causal link between Barco and the allegedly false claims. On the remaining two, the duty entered on the cost sheet does not correspond to the duty amount on the Form 7501; the cost sheet and form 7501s are temporally separated (including, in one instance by 3 years); and any allegation that there is a connection is at best conclusory and, in reality, *disproved* by the Government's own exhibits. Conclusory allegations like these "shed no light on the nature or content of the individual forms or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved. This does not satisfy 'the who, what, when, where, and how' requirement for pleading fraud under Rule 9(b)." *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). As a result, the Court must grant Barco judgment on all four Counts of the Complaint.

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

a.      **Exhibit 7-C Evidences An Absence Of A Causal Connection**

The duty amount on the 7501s that is Exhibit 7-C and its corresponding cost sheet that is Exhibit 7-A do not match. Exhibit 7-C is a 7 Entry Summary/Form 7501 (Entry No. BVQ-0158574-3), with an Entry Date of *January 9, 2017*:

| DEPARTMENT OF HOMELAND SECURITY<br>U.S. Customs and Border Protection<br>**ENTRY SUMMARY** | | | PAPERLESS   Page 1<br>Form Approved OMB No. 1651-0022<br>EXP. 10-31-2017 |
|---|---|---|---|
| | 1. Filer Code/Entry No.<br>BVQ-0158574-3 | 2. Entry Type<br>01   ABI/P | 3. Summary Date<br>01/09/17   034 |
| | 4. Surety No.<br>050 | 5. Bond Type<br>8 | 6. Port Code<br>2704 | 7. Entry Date<br>12/26/16 |

| 8. Importing Carrier<br>CSCL EAST CHINA SEA | 9. Mode of Transport<br>11 | 10. Country of Origin<br>CN | 11. Import Date<br>12/26/16 |
|---|---|---|---|
| 12. B/L or AWB No.<br>UASU CNSHA652860, EGFC16120039 | 13. Manufacturer ID<br>CNHUAYD119JIA | 14. Exporting Country<br>CN | 15. Export Date<br>12/08/16 |
| 16. I.T. No. | 17. I.T. Date | 18. Missing Docs | 19. Foreign Port of Lading<br>57035 | 20. U.S. Port of Unlading<br>2704 |
| 21. Location of Goods/G.O. No.<br>W185 Voyage: 1650E | 22. Consignee No.<br>52-195228300 | | 23. Importer No.<br>152704-14993 | 24. Reference No. |
| 25. Ultimate Consignee Name and Address<br>BARCO UNIFORMS INC<br>350 W ROSECRANS AVE | | 26. Importer of Record Name and Address<br>HUAIAN Y&D GARMENT CO LTD<br>NO 699 NANCHANG NORTH ROAD HUAIY | |
| Destination: CA<br>City  GARDENA | Customer Reference # ASN-OI161536<br>State  CA  Zip  90248-1728 | City  JIANGSU | State  FN  Zip       CN |

The Government alleges that line 4 of this form, for "Women's Blouses," corresponds to a cost sheet item for a Unisex Chef Coat. Compl. ¶ 150. Line 4 lists a quantity of 5,278 pieces (or 440 dozen, as indicated in Box 31 of the 7501) with a duty amount of $3,407.42, which equates to $0.65 per item (i.e., $3,407.42 / 5,278):

| 004 | WOM BLOUSES,MN-MDE,OTH,<2 COLO<br>6206.40.3030          2,012 KG<br>641                       1,811.00 KG | 440.00 DOZ | $12,667   26.9%<br>C $637<br>N | $3,407.42 |
|---|---|---|---|---|
| | 056 - Cotton Fee<br>499 - Merchandise Processing Fee<br>501 - Harbor Maintenance Fee | | $0.003247 per KG<br>0.3464%<br>0.1250% | $5.88<br>$43.88<br>$15.83 |

(highlighting added).

The cost sheet allegedly related to this Entry Summary/Form 7501s is allegedly Exhibit 7-A. This cost sheet, however, lists the total DDP cost (per item) as $8.36, and the duty amount as $0.81 (not $0.65) and is dated *September 30, 2016*—more than three months prior to the 7501 form:

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

| VENDOR | Item # | Description | Usage | Wasteage | Unit | Cost | Extended Cost | Extended Cost |
|---|---|---|---|---|---|---|---|---|
| CM(Included OH+Government Tax) | | Cut, Make | | | | $1.66 | $1.66 | 19.8% |
| VENDOR PROFIT | | | | | | $0.45 | $0.45 | 5.4% |
| DUTY | | | | | | $0.81 | $0.81 | 9.7% |
| FREIGHT TO BARCO | | | | | | $0.20 | $0.20 | 2.4% |
| | | | | | TOTAL LABOR/CMP+Duty+freight | | $3.12 | 37.3% |
| | | | | | TOTAL DDP | | $8.36 | 100.0% |

### b.    Exhibit 8-C Evidences An Absence Of A Causal Connection

The Entry Summary/Form 7501 that is Exhibit 8-C and its corresponding cost sheet that is Exhibit 8-A also contain duties that do not match. Exhibit 8-C is an Entry Summary/Form 7501 (Entry No. GL5-5183435-8), with an Entry Date of October 29, 2018:

Line 2 of this form (which begins on the first page and continues onto the second) is for men's shirts with a total quantity of 3,981 pieces (or 332 dozen, as indicated in Box 31 of the 7501). The duty amount listed for these items is $1,134.16, which equates to $0.28 per item (i.e., $1,134.16 / 3,981):

(highlighting added).

Exhibit 8-D is the "commercial invoice" between Shanghai Grandsun Imp. & Exp. Co., Ltd. and Mega Goodwill, used to support the amounts declared on this Entry Summaries/Form 7501. It includes an entry for men's shirt, style numbers WN102B and WN102XB, with a total quantity of 3,981 pieces (3,130 + 851) which is the same quantity as Entry Summaries/Form 7501:

| MEN'S WOVEN SHIRT, 65% POLYESTER, 35% COTTON HS: 6205.30.2030 STYLE NO.: WN102B | | | |
| MEN'S WOVEN SHIRT, 65% POLYESTER, 35% COTTON HS: 6205.30.2030 STYLE NO.: WN102XB | 1.10 /PC | 3130.00 PCS | US$3,443.00 |
| | 1.10 /PC | 851.00 PCS | US$936.10 |

(highlighting added).

The cost sheet allegedly related to this Entry Summary/Form 7501s is Exhibit 8-A, which is dated "***Revised 3/1/15***" – *more than three years prior to the 7501 form*. Its first page includes a men's shirt style WN102B ("Male Manager SS dobby shirt") and lists the total DDP cost (per item) as $6.67, and the duty amount as $0.79:

Page 2 of Exhibit 8-A shows the Cost Sheet for style WN102XB ("Male Manager SS dobby shirt," extra-large size) with a total DDP cost (per item) as $7.49, and the duty amount as $0.79 (not $0.28):[12]

---

[12] Oddly, the Entry Summaries/Form 7501 in Exhibit 1 to the Government's Complaint shows an earlier shipment (from February 2016) for the same style, WN102B. The cost sheet associated with WN102B did not change between the February 2016 and October 2018 shipments – indeed, the Cost Sheet attached as Exhibit 8-A is dated "3/10/15." The cost charged to Barco for WN102B on the 2016 invoice and the 2018 invoice, moreover, did not change – it is $6.67 on both invoices. However, the duty amount per item listed on the Entry Summaries/Form 7501 for WN102B changes drastically – from $0.70 in 2016, to $0.28 in 2018. This is further evidence that the duty amount listed on the Cost Sheet has no causal connection to the duty amount reported on the Entry Summaries/Form 7501 and paid to Customs.

| VENDOR | Item # | Description | Usage | Wasteage | Unit | Cost | Extended Cost | Extended Cost |
|---|---|---|---|---|---|---|---|---|
| CM(include garment tax) | | Cut, Make, Profit | | | | $1.90 | $1.90 | 25.4% |
| VENDOR PROFIT | | | | | | 0.300 | $0.30 | 4.0% |
| DUTY | | | | | | $0.79 | $0.79 | 10.5% |
| FREIGHT TO BARCO | | | | | | $0.15 | $0.15 | 2.0% |
| | | | | | | | $0.00 | 0.0% |
| | | | | TOTAL LABOR/CMP | | | $3.14 | 41.9% |
| | | | | TOTAL DDP | | | $7.49 | 100.0% |

The Complaint contains no allegations linking these two 7501s to the allegedly associated cost sheets, beyond the conclusory allegation that Barco's use of the cost sheets caused the IOR to submit a false Customs declaration. The temporal linkage between the 7501s and cost sheets is also attenuated, particularly the three year difference in Exhibit 8. These deficiencies fail to establish the necessary causal connection and also fail to exclude a lawful alternative explanation; namely, that the IOR's declaration, whether true or false, was arrived at independently of any act of Barco's. The failure to plead the facts concerning how Barco's allegedly false statement caused the importer to file a false claim requires judgment in Barco's favor on all the Government's claims. *United States ex rel. Brown v. Celgene Corp.*, 2014 U.S. Dist. LEXIS 99815, at *8 (C.D. Cal. July 10, 2014) (observing that the causation element of the False Claims Act is satisfied when defendants' "conduct was a substantial factor in bringing about the false claims and such claims were a foreseeable and natural consequence of its conduct") (citation omitted);[13] *see also Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1164 (E.D. Cal. 2014) ("[A] court will dismiss any claim that, even when construed in the light most favorable to the plaintiff, fails to plead sufficiently all required elements of a cause of action.") (internal quotations omitted). Accordingly, the Court should grant judgment on the pleadings in favor of Barco.

---

[13] Even if the Court were to disagree and rule that Barco "cause[d] others companies to present false information to CBP," such a finding is applicable only to the first provision of 31 U.S.C. § 3729(a)(1)(G) which is Count II in the Complaint. Compl. ¶¶ 192-198. By contrast, the "Improperly Avoids or Decreases Obligation to Pay" prong, plead as Count I, *id.* at ¶¶ 183-191, does not contain language attaching liability to one who causes another to improperly avoid or decrease and obligation to pay. 31 U.S.C. § 3729(a)(1)(G). The allegations here are similar to those that were dismissed in *United States ex rel. Henig v. Amazon.com, Inc.*, No. 19-cv-05673, 2025 U.S. Dist. LEXIS 869, *26-27 (Jan. 3, 2025) due to a lack of "accompanying allegations of proximate cause and foreseeability" including any allegations that the defendant was ever altered to the IOR's allegedly false entry documents. Accordingly, even under such a reading, the Court must grant judgment to Barco, at a minimum, on Count I based on the Government's failure to adequately plead facts establishing the causation element.

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

**5.      The Complaint Fails To Identify Any "Obligation" Owed By Barco**

Under the "reverse" false claim provision of the FCA, liability attaches when a person either (i) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government," or (ii) "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). *See generally United States ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015) (observing that § 3729(a)(1)(G) "creates liability for two categories"); *United States v. Cockerell Dermatopathology, P.A.*, 2021 U.S. Dist. LEXIS 201997, at *14 (N.D. Tex. Oct. 20, 2021) (noting that § 3729(a)(1)(G) "provid[es] two methods of violating the statute"). Under both provisions, the Government must plead (and later prove) an "obligation" which the statute defines as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, [or] from statute or regulation." 31 U.S.C. § 3729(b)(3). Critically, this "definition requires that a legal obligation to pay the government be 'established'" at the time the false statement or record is made. *United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 820 (9th Cir. 2024) (quoting 31 U.S.C. § 3729(b)(3)). *See also Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 735 (6th Cir. 1999) ("[t]he obligation cannot be merely a potential liability[;] . . . a defendant must have had a present duty to pay" the government) (quoting *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997)). Because Barco was not the IOR, it had no legal obligation relating to the payment of customs duties. Nowhere does the Complaint allege the amount of duty Barco allegedly owed or when that obligation was determined. It merely states that the duty should have been determined by value of the Chan companies' invoice to Barco, rather than the amount on the 7501, but it fails to allege what the duty amount should have been and fails to exclude the

possibility that the invoice to Barco included non-dutiable costs.[14] For this reason, the Court should grant Barco judgment on the pleadings on Counts I and II.

### III.     The Unjust Enrichment Claim Fails Under Rule 12(b)(6)

Because there is an adequate remedy at law available to the Government, 28 U.S.C. § 1582(3), the equitable remedy of unjust enrichment is unavailable to the Government. *Universal Fruits*, 370 F.3d at 833-37 (the CIT "shall have *exclusive jurisdiction* of any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover customs duties.") (emphasis added). For these reasons, the Complaint, despite its considerable length, fails to meet Rule 8(a)'s basic pleading requirements and falls far short of satisfying Rule 9(b)'s heightened pleading requirement.

As set forth above, the CIT has "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States. 28 U.S.C. § 1582. *See* discussion *supra* Section I. As an equitable remedy, unjust enrichment is unavailable where there is an adequate remedy at law. *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law."); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution . . . ."). Because Congress has provided the Government with a specific statutory avenue to recover underpaid customs duties

---

[14] Barco, moreover, could not have known the non-dutiable costs. The crux of the Government's allegations is that Barco "Directed and Recorded the Fraud Scheme through 'Cost Sheets.'" Compl. p. 21, heading "B." In order to calculate the duty, one has to first know the Transaction Value, i.e., the price actually paid or payable. 19 U.S.C. § 1401a; 19 U.S.C. § 1401b; 19 C.F.R. § 152.101. As described above, however, the IOR in calculating the dollar figure declared on the Form 7501 excludes costs, charges, or expenses incurred for transportation and related services incident to the international shipment of the merchandise from the country of exportation to the place of importation in the United States; as well as the actual cost of freight, insurance and other costs solely incident to international shipment if they are included in the price actually paid or payable or referred to in the terms of sale. *See* discussion *supra* Section II.B.2; 19 C.F.R. § 152.102(f); 19 C.F.R. § 152.103(a)(5)(ii). Barco, like similarly situated purchasers using DDP incoterms, would not know any of these non-dutiable costs and, critically, the Government does not allege that Barco knew of them. Without this information, it is implausible that Barco, as alleged, could have calculated the duty rate to be paid by the importer.

through litigation before the CIT, 28 U.S.C. § 1582; *Universal Fruits*, 370 F.3d at 833-37, the government cannot simultaneously pursue a common law unjust enrichment claim.

Alternatively, because the Government has failed to plead the underlying fraud with particularity, the unjust enrichment claim—which is premised on that fraud—also fails. *United States v. Peters*, 2024 U.S. Dist. LEXIS 122120, at *16 (E.D. Cal. July 10, 2024) (citing *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) and *United States ex rel. Berntsen v. Prime Healthcare Servs., Inc.*, No. 11-cv-8214 PJW, 2017 WL 11636166, at *4 (C.D. Cal. Jan. 13, 2017)). Accordingly, the Court should grant judgment on the pleadings to Barco on Count IV, for unjust enrichment, as well.

## IV.    The False Claims Act's *Qui Tam* Provisions Violate Article II Of The United States Constitution

The FCA violates both the Executive Vesting and Take Care Clauses and the Appointments Clause as its *qui tam* provisions improperly allow Relators to exercise Executive powers. By allowing private parties to litigate on behalf of the United States, the *qui tam* provision conflicts with the President's Constitutional authority to (1) execute the laws and (2) take care that laws are faithfully executed. Moreover, relators can file lawsuits to remedy injuries to the Government's fisc despite suffering no injury themselves. In doing so, relators function as officers of the United States despite not being appointed through Constitutionally required processes. Their exercise of executive power is therefore inconsistent with the Appointments Clause. Thus, even were the court to find it has jurisdiction and the claims are adequately pled, the Relator's Complaint must be dismissed as unconstitutional.[15]

The Supreme Court expressly reserved the question of the Constitutionality of the FCA's *qui tam* provisions. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000). Since then, multiple concurring and dissenting opinions have questioned its Constitutionality. *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S.

---

[15] The offense to the Constitution goes even deeper if this Court rules that a filing by a relator allows the U.S., via intervention, to avoid the CIT's exclusive jurisdiction and bring a customs duties case in federal district court. *See generally* discussion *supra* Section I.

419, 442 (2023) (Kavanaugh, J., joined by Barrett, J., concurring); *id.* at 449 (Thomas, J., dissenting); *see also Wisconsin Bell, Inc. v. United States ex rel. Heath*, 145 S.Ct. 498, 515 (2025) (Kavanaugh, J., joined By Thomas, J., concurring). This Court should join the other district courts that have recently held the FCA's *qui tam* provision unconstitutional. *See, e.g., United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. 2024) (appeal pending).

### A. The False Claims Act's *Qui Tam* Provisions Violate The Executive Vesting And Take Care Clauses

The Executive Vesting Clause provides that the "executive Power shall be vested in" the President, and the Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. The FCA *qui tam* provisions conflict with these two clauses as they (i) assign the United States' executive law enforcement power to private relators—creating "ersatz departments of justice," Constitutionality of the Qui Tam Provisions of the False Claims Act, 13 Op. O.L.C. 207, 209 (1989) (William Barr, Ass't Att'y Gen.)—and (ii) contain no provisions providing the President with supervisory control.

Under the Executive Vesting Clause, "[t]he entire 'executive Power' belongs to the President alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). The Take Care Clause "does not leave to speculation who is to administer the laws enacted by Congress," making clear that the President bears that responsibility "personally and through officers whom he appoints." *Printz v. United States*, 521 U.S. 898, 922 (1997). The FCA allows the "outsourcing of prosecutorial power to a private person," *United States ex rel. Montcrief v. Peripheral Vascular Assocs.*, 133 F.4th 395, 412 (5th Cir. 2025) (Duncan, J., concurring), which "removes from the Executive Branch the prosecutorial discretion that is at the heart of the President's power to execute the laws" and "leaves no one in government who is accountable for the prosecution of government claims." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 761 (5th Cir. 2001) (en banc) (Smith, J., dissenting).

Further, the President lacks supervisory control over a Relator's exercise of executive power. The Executive Vesting and Take Care Clauses require the President to have the "ability to supervise and remove [those] who wield executive power in his stead." *Seila Law*, 591 U.S. at

238. The FCA, however, deprives the President of this power as he has "no power to remove the relator from the litigation under any circumstances." *Riley*, 252 F.3d at 763 (Smith, J., dissenting). The FCA also limits the Government's ability to influence a relator's participation in a FCA case even when, as here, the Government intervenes. The FCA provides for "unrestricted" participation by a relator in an intervened case. 31 U.S.C. § 3730(c)(2)(C). The Government can *seek* some limits, such as the number of witnesses called by a relator and the length of examination at trial, but only if it can convince a judge that the relator's participation would "interfere with or unduly delay" the Government's prosecution of the case or be "repetitious, irrelevant, or for purposes of harassment." *Id.* The FCA therefore impedes the President from carrying out its "constitutional obligation to ensure the faithful execution of the laws," and therefore violates Article II. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010) (citation omitted). Because the *qui tam* provisions transgress the Executive Vesting and Take Care Clauses, Lee's lawsuit is an "exercise of power that [she does] not lawfully possess." *Zafirov*, 751 F. Supp. 3d at 1323 (quoting *Collins v. Yellen*, 594 U.S. 220, 258 (2021)).

**B.    The False Claims Act's *Qui Tam* Provisions Also Violate The Appointments Clause**

Relator Lee exercises significant authority in bringing civil suits on behalf of the United States and occupies a continuing position established by law, making her an "Officer[] of the United States." And because Relator Lee, like all relators, was not appointed consistent with the requirements of the Appointments Clause, her exercise of authority in bringing a FCA suit is unconstitutional.

The Appointments Clause requires that "principal officers," such as agency heads, must be nominated by the President and confirmed by the Senate. U.S. Const. art. II, § 2, cl. 2, *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021). For "inferior officers," Congress may vest their appointment "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. "This appointment procedure balances the separation of powers with the need to secure a 'chain of Dependence' connecting the President and his subordinates." *Zafirov*, 751 F. Supp. 3d at 1306. Individuals qualify as "Officers of the United States" if they (1) exercise

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

"significant authority pursuant to the laws of the United States" and (2) occupy "'continuing' position[s] established by law." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (citation omitted). *Qui tam* relators—whom the FCA gives broad authority to "bring a civil action" "in the name of the Government," 31 U.S.C. § 3730(b)(1)—qualify as "Officers of the United States" because they satisfy both prongs of this test.

First, relators exercise "significant authority." This requirement focuses on "the extent of power an individual wields in carrying out his assigned functions." *Lucia*, 585 U.S. at 245. Relators, like relator Lee, here, can initiate a legal action to recover funds spent by the Government. 31 U.S.C. § 3730(b) ("actions by private persons"). The ability to "conduct[ ] civil litigation in the courts of the United States for vindicating public rights" is significant authority. *Buckley v. Valeo*, 424 U.S. 1, 140 (1976). More than thirty years ago, the Circuit found that relators do not have significant authority and thus the FCA *qui tam* provisions did not violate the Appointments Clause. *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 751-58 (9th Cir. 1993) (finding the FCA *qui tam* provisions did not violate the Appointments Clause).[16] Since then, however, multiple Supreme Court decisions have clarified that core executive powers include deciding whether and how to "pursue legal actions against defendants who violate the law," *United States v. Texas*, 599 U.S. 670, 678 (2023) (citation omitted), and whether and how to extract "daunting monetary penalties against private parties on behalf of the United States." *Seila Law*, 591 U.S. at 219. It has further stated that the authority to seek "daunting monetary penalties against private parties on behalf of the United States in federal court" is a "significant" and "quintessentially executive" power. *Seila Law*, 591 U.S. at 219, 224-225. As relators have unfettered discretion to decide whether and when to file suit, which defendants to target, what claims to pursue, and what legal theories to advance—decisions backed by the threat of treble damages and civil penalties—this Court should apply more recent and binding Supreme Court precedent in finding that FCA relators exercise significant authority.

---

[16] The *Boeing Co.* court addressed only the significant authority element and did not rule upon a FCA relator's occupying a "continuing position."

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Second, relators occupy continuing positions. This requirement "stress[es] ideas of tenure and duration" and asks whether the position is impersonal, durable, and statutory, rather than personal, transient, and discretionary. *Lucia*, 585 U.S. at 245 (internal quotation marks, citation, and alteration omitted). The Second Circuit set forth a three prong test in which a position is continuing if "(1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental." *United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022); *see also Zafirov*, 751 F. Supp. 3d at 1315 (utilizing this test).

Any "person" can bring a FCA action. 31 U.S.C. § 3730(b). The position of relator, moreover, is not personal to a particular individual even within the context of the same case. For example, one relator may be replaced by another, such as if the relator dies or becomes bankrupt. *See, e.g., United States v. NEC Corp.*, 11 F.3d 136, 139 (11th Cir. 1993); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 361-364 (5th Cir. 2014). Or, if a relator's complaint is dismissed on procedural grounds, another relator may step into the role and raise the same claims. *See Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 575 U.S. 650, 662-664 (2015).

A relator's position is not transient or fleeting as the FCA not only allows relators to initiate and litigate civil enforcement actions on the Government's behalf, but requires them to serve sealed complaints on the Government and gives the Government some ability to intervene, monitor discovery, and pursue alternate remedies. 31 U.S.C. § 3730. This structure ensures the relator continues in an enduring Government position, rather than an ad hoc role. Additionally, as this matter dramatically illustrates, a *qui tam* action often lasts for years. This matter has been pending for more than nine years.

A relator's position, moreover, involves duties that are more than incidental. As described above, relators exercise the core executive power of bringing litigation on the Government's behalf. Under no plausible scenario can such actions be viewed as merely "incidental" to regular government operations. The fact that relators have filed over 18,000 actions and recovered over $60 billion on behalf of the United States is further evidence that relators serve a significant role in

Case No. 2:16-CV-1805-DC-JDP

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Government enforcement. *See* Press Release, U.S. Dep't of Just., *False Claims Act Settlements and Judgments Exceed $6.8B in Fiscal Year 2025*, Jan. 16, 2026 and its attached *Statistics Sheet* (publicly available at https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-68b-fiscal-year-2025) (showing that relators have filed 18,253 *qui tam* actions and obtained settlements and judgment totaling $60,972,925,646). Accordingly, the FCA's *qui tam* provisions violate the Appointments Clause.

*       *       *

Because the FCA's *qui tam* provisions violate the Executive Vesting and Take Care Clauses and the Appointments Clauses, the action must be dismissed and judgment granted to Barco. When litigation "involve[s] a Government actor's exercise of power that the actor did not lawfully possess," as is the case here, the remedy is to set aside ultra vires actions. *Collins*, 594 U.S. at 258. *See also Zafirov*, 751 F. Supp. 3d at 1324 (granting defendants' motion for judgment on the pleadings after concluding that the *qui tam* provisions violated the Constitution); *Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 514, 531 (5th Cir. 1999) (affirming dismissal of *qui tam* action after concluding that the *qui tam* provisions violated the separation of powers and Take Care Clause), *rev'd en banc*, 252 F.3d 749.

**CONCLUSION**

For the foregoing reasons, this Court should enter Judgment on the Pleadings in favor of Defendant Barco Uniforms, Inc.

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Dated: March 16, 2026                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                     By:    _____/s/ David L. Douglass_____
                                            DAVID L. DOUGLASS
                                            DAVID T. FISCHER
                                            NIKOLE SNYDER
                                            MELISSA K. EAVES

                                     *Attorneys for Defendant Barco Uniforms, Inc.*

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS